## LENOIR v. STATE.

(Division B. Feb.. 9, 1931.)

[132 So. 325. No. 29147.]

698

**McClellan & Tubb,** of West Point, for appellant.

**Edwin R. Holmes, Jr.,** Assistant Attorney-General, for the state.

**Ethridge, P. J.,** delivered the opinion of the court.

The appellant was indicted and convicted for the unlawful possession of intoxicating liquors, and was sentenced to pay a fine of two hundred fifty dollars and to serve thirty days in jail, from which judgment he appeals here.

The evidence was procured by the sheriff without a search warrant by halting and searching the automobile occupied by the appellant and another. It is contended that the sheriff did not have sufficient information to warrant the search, because the information did not amount to probable cause to believe the defendant had intoxicating liquor. The sheriff's statement as to the information to constitute probable cause is as follows:

"On Thursday of last week I had information that some negroes were hauling whiskey from this county to West Point, Mississippi, and that a car would be down

that night. So I put a couple of boys at that filling station over there in the afternoon—I first went and got the Clay county tag numbers and give it to them and told them to stay there that afternoon and see if any car of negroes in the meantime passed through going in that direction with this tag number. The numbers ran from thirty-six something to thirty-nine thousand and fifty— the Clay county numbers. Just after dark this car passed through—number 38-163. We immediately got ready. We knew where they were going to get the whiskey and we went on down. We thought possibly they might turn off at Shuqualak so we went on below Shuqualak to catch them. Just as I got ready to stop they drove by and passed me, just as we had pulled over to the side to stop—

"Q. Was it that same numbered car? A. I will come to that later. One of the boys seen the car going through and he said 'That's the car passing now.' I didn't pay any attention to it—in fact I hadn't seen it. I turned around to take after him and got up behind them and saw it was the same car. He drove very fast—as fast as an old T-model Ford can go—

"THE COURT: You saw the tag number? A. Yes, sir, I saw the tag number.

"Q. Go ahead, Mr. Walker. A. I got almost back to Macon and saw there was no place for them to turn off so we passed them. I knew we could get them on the bridge. So we passed them and got to the bridge and I dropped two men at the other end and Mr. Steele and I came across the bridge and turned around and headed back on the bridge and cut off our lights. He was right there in a minute and we caught him on the bridge with the liquor.

"Q. Who did you catch on the bridge? A. Jordan Lenoir and Roger Mitchell.

"Q. Point out Jordan Lenoir? A. That is Jordan Lenoir sitting there. . . .

"Q. From whom did you get this information, Mr. Walker, that these negroes were transporting liquor through your county? A. It was reliable information I will say. I will answer the other if the court says so.

"THE COURT: You will have to answer it, Mr. Walker. A. I got the information from Mr. C. S. Fields.

"Q. Who is Mr. C. S. Fields? A. A big farmer south of Shuqualak near where they were getting this whiskey.

"Q. Did he tell you? A. He told me these negroes were hauling this whiskey from there to West Point and wanted me to catch them.

"Q. What negroes? A. He didn't know who they were of course.

"Q. Did he know the number of the car? A. No, sir.

"Q. Did he give you any information as to the number of the car? A. No, sir. He gave me a slip of paper that was headed 'West Point, Miss.' and the date, and it said this car—one car—would be down here that night, Thursday night.

"Q. Did he say what car? A. No, sir.

"Q. Did he give you the number of the car? A. No, sir.

"Q. How did you know what number to tell your deputies to look for? A. I told them to look for a Clay county number.

"Q. You were going to arrest any negroes from Clay county that came by here? A. Sure, I was going to search them, yes, sir.

"Q. Did he give you any description of the negroes? A. No, sir.

"Q. Did he tell you the kind of car they were driving? A. No, sir, he said it was a Ford car.

"Q. Did he tell you what kind of Ford car? A. No, sir.

"Q. Did he give you any description of the negroes or of the car, except to tell you it was a Ford car? A. No, sir.

"Q. You didn't know any other description? A. No, sir, he didn't give me any description except to say he wanted to catch the negroes at this end—mainly the negroes that were selling the liquor."

It will be seen from the above testimony that the sheriff had no information as to the number of the car or to whom it belonged, or who operated it, or who were the negroes he was seeking under the information obtained. In other words, his information was that some negroes were expected to visit the vicinity in which Mr. Fields lived and procure liquor from some one in that community. The only information was that some negroes in a Ford car of some kind would probably be down on a certain day. This, of course, is nothing more than a general warrant for any negro that might pass through the county in a Ford car. Section 23 of the state constitution requires that the affidavit, when one is issued, shall specifically describe the thing to be searched or the person or thing to be seized. While under the law of this state an automobile may be searched on probable cause without a search warrant, the probable cause must be such as would legally justify the issuance of a warrant if one were applied for. Certainly no officer could issue a search warrant that would have any legal efficacy to search any Ford car in a county that might be occupied by negroes.

The only evidence shown was that obtained by the search. After the sheriff and his deputies had hemmed the negroes in on the bridge, they saw them throw something from the car, but supposed it to be a pistol; however, on the following morning, it was found to be a small jar of liquor. The negroes attempted to turn and escape, but found themselves surrounded by deputies and had to submit to the search. The case at bar is weaker than the case of Ford v. City of Jackson, 153 Miss. 616, 121 So. 278. We held in that case that a search, under circumstances there carried on, was illegal, and the evidence

could not be admitted. The same ruling applies here. It follows that the judgment of the court below must be reversed and the cause remanded.

Reversed and remanded.