## ELARDO *v.* STATE.

(Division B. Jan. 30, 1933.)

[145 So. 615. No. 30345.]

O. L. Kimbrough, of Greenwood, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

**Ethridge, P. J.,** delivered the opinion of the court.

The appellant was tried and convicted on a charge of possessing intoxicating liquors, in a justice of the peace court of Le Flore county, Mississippi, and appealed from that to the county court, where the cause was tried anew, resulting in a conviction in that court, from which he appealed to the circuit court, and there the judgment of conviction was affirmed. The circuit judge having certified that a constitutional question is involved, an appeal is prosecuted here.

The question turns upon the legality of the search by which the evidence, upon which the appellant was convicted, was procured.

It appears in the record that a person phoned the deputy sheriff that he (such person) had information that a truck was stalled on Grand boulevard with a load of liquor and that Heafner's son-in-law was in charge of the truck. On receiving this message, the deputy sheriff repaired to the edge of the high water where the truck was being pulled out by some mules, and found that the appellant was steering the truck while it was being pulled out. When the truck crossed the high water and reached the point where the deputy sheriff was, said deputy sheriff got on the running board of the truck, stating that the appellant had "played hell," and directed that the truck be driven to the courthouse. About the time he reached the courthouse, the deputy sheriff smelled liquor, and, on searching, discovered fifteen ten-gallon kegs of liquor. The deputy sheriff testified that he did not see the kegs until he mounted the running board and did not smell the liquor until he reached the courthouse, as stated.

There was no search warrant issued, and the witness who gave the deputy sheriff the information testified that the communication he made to the deputy sheriff was that he (the witness) had information; that he did not tell the deputy sheriff, as a fact, that liquor was there in the truck, and testified further that he had no personal knowledge of such fact, but that he had information that such was the case; that he stated to the sheriff, as above stated, that he had information, but did not state it as a positive fact. This witness, a Mr. Weaver, was asked the following questions and gave the following answers:

"Q. I wish you would state to the court what information you gave Mr. Weir, the witness who has just testified in reference to this matter, if any? A. I gave Mr. Weir the information that there was a truck load of liquor stuck on the Boulevard.

"Q. What did you say to Mr. Weir? A. I told him I had information there was a truck load of liquor stuck over there just this side of Mr. Vardaman's house. . . .

"Q. You did not tell him that you had any personal knowledge of this? A. No sir, only my information.

"Q. You told Mr. Weir that you understood there was a truck full of whiskey stuck on the Boulevard just this side of Will Vardaman's house? A. I told him I had information. . . .

"Q. Did you tell him who was in control of that whiskey? (Objected to. Overruled. Exception.) A. Yes sir.

"Q. Who did you tell him? A. I told him my information was it was Heafner's son-in-law.

"Q. You never did call the defendant's name? A. I can't hardly pronounce his name. I said his son-in-law.

"Q. You didn't call his name to Mr. Weir? A. Lardo, I said some such name as that.

"Q. What I am asking you, did you undertake to tell him the name of the person in the truck, or did you describe him as being Heafner's son-in-law? A. Described him as Heafner's son-in-law.

"Q. You did not undertake to give him any name? A. I told him it was his son-in-law.

"Q. Did you give him any name at all? A. I told him it was his son-in-law."

It will be seen that the deputy sheriff and the witness Weaver testified that Weaver told the deputy sheriff that he had information there was a truck load of liquor stalled, and that Heafner's son-in-law was in charge.

The record does not show with definiteness whether in fact it was the son-in-law of Heafner who was in charge of the truck.

The law does not authorize an officer to make a search on mere information of the informant, but the information must be communicated as a fact within the knowl-

edge of the person communicating the information. In other words, a search warrant is not issued except on information amounting to probable cause, and mere rumor is not sufficient to constitute probable cause.

The provisions for search and seizure are strictly construed against the state and in favor of the citizen. Grau v. United States, 53 S. Ct. 38, 40, 77 L. Ed. —, and Falkner v. State, 134 Miss. 263, 98 So. 691. In the Grau Case, the court held that: "A search warrant may issue only upon evidence which would be competent in the trial of the offense before a jury    (Giles v. U. S. [C. C. A. 1st], 284 F. 208; Wagner v. U. S. [C. C. A. 9th], 8 F. (2d) 581), and would lead a man of prudence and caution to believe that the offense has been committed '(Steele v. U. S., 267 U. S. 498, 504, 69 L. Ed. 757, 45 S. Ct. 414)." See, also, Smith v. State, 160 Miss. 56, 133 So. 240; Lenoir v. State, 159 Miss. 697, 132 So. 325; Patton v. State, 160 Miss. 274, 135 So. 352; Walters v. State (Miss.), 143 So. 847, and the authorities cited in this last case.

The state relied upon the case of Story v. Greenwood, 153 Miss. 755, 121 So. 481. In that case, however, the person who gave the policeman the information gave it as a matter of fact within the knowledge of the informant, the sheriff. The information was of a positive nature, and was stated as though the informant knew the fact. It was developed in that trial that the sheriff did not, in fact, know of his own personal knowledge the facts communicated to the policeman. It was there held that the information, being given by the sheriff, as a fact, to the policeman, constituted probable cause.

There is wide difference between a person communicating to an officer something as a matter within the informant's own knowledge, and a communication to an officer of information which has been received from a third person. Where an informant states facts as facts purporting to be within his knowledge, and the officer,

relying on the statement and the credibility of the informant, accepts the information as facts, he may act thereon.

It is manifest in the case before us that, had the deputy sheriff appeared before a justice of the peace, or other judicial officer authorized to issue warrants, and stated to such officer that Weaver had informed the deputy sheriff that Weaver understood, or had information, that liquor was in a certain place, such officer would not be authorized to issue a warrant on such hearsay information; and, where a warrant could not be issued upon information by a justice of the peace, the sheriff could not make a search without a warrant. In other words, his right to make a search without a warrant is never greater than it would be to obtain a warrant. If his information would not obtain a warrant, then he could not make a search without a warrant.

It has been held in numerous cases that information must exist before search is made, and cannot be supplied by after-discovered facts. See cases supra.

The constitutional right of every citizen, though he may be a criminal, or an undesirable citizen, is sacred in the eyes of the law. The foundation and superstructure of our government are based upon fundamental rights of the citizens. There is no distinction in the rights of the citizens. whether there may be in the personnel or not. A citizen may be the embodiment of evil, full of iniquity, and may wholly disregard his duties as a citizen and violate the laws of the state, nevertheless, his rights, under the law, are sacred. It is seldom that a law-abiding and virtuous citizen has an occasion to test his constitutional rights. The necessity for the constitutional rights here involved being observed has been recognized from the beginning of our government. The evils flowing from unrestrained power prior to the founding of our government show that such power is more

dangerous to the general welfare than an individual criminal, and that it is best for society as a whole that we have these constitutional rights, and that they apply to, and protect, every person subject to the jurisdiction of our government.

As the conviction in the case at bar stands upon evidence obtained by an illegal search, and as this evidence was inadmissible, under the facts in this case, the judgment of the court below must be reversed, and the cause remanded.

Reversed and remanded.