LACAZE *v.* STATE

No. 43811 February 14, 1966 183 So. 2d 176

*Leon L. Shelton,* Jackson, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

BRADY, TOM P., J .

This is an appeal from the Circuit Court of the First District of Hinds County, Mississippi, wherein the appellant was tried and convicted under Mississippi Code Annotated section 2044 (1956) for the possession of burglar's tools, and sentenced to serve five years in the State Penitentiary.

The essential facts in this case are briefly as follows: McDowell Road runs east and west in southwest Jackson. It is intersected by Dale's Lane which runs north and south. On the north side of McDowell Road, there is a shopping center known as Appleridge Shopping Center. On the south side of McDowell Road there is a row of offices and stores, part on McDowell Road and part on Dale's Lane, to the south, around the corner. At the south end of the southwest corner of the block in which these stores and offices are located on Dale's Lane is a weed patch in an undeveloped area, and a gravel road extends east.

At approximately 1:40 A. M. on Sunday, September 28, 1964, city policemen, Officers Bailey and Boggan, were patrolling this area in their police car. Proceeding west on McDowell Road, they turned into the Appleridge Shopping Center, with their lights off, and made a tour around the buildings, checking the doors. When they came from behind the buildings at the southwest corner of the shopping center, they looked in a southeasterly direction across McDowell Road toward the buildings located on the south side thereof, where they saw two men 282 feet away, walking westwardly about ten feet apart, in front of Holloman's Drugstore, which is located on the south side of McDowell Road facing north, toward Appleridge Shopping Center. The police officers proceeded across the parking lot of Appleridge Shopping Center in their automobile at approximately five miles per hour, gradually increasing their speed up to fifteen or twenty miles per hour. Just before crossing the parking lot to McDowell Road, they were forced to wait for a car to pass.

As the officers approached the two men, they started walking toward Dale's Lane and turned and proceeded south on Dale's Lane. The closer the car approached the two men, the faster the men walked. Rookie Officer Robert Bailey drove his car between the two men, and

both officers jumped out of the car. Bailey caught Richard Goff, who was in front. The other man ran around the corner into the high weeds, in spite of the fact Officer Boggan had his shotgun in his hand and had pumped it and commanded him to halt. He escaped and was never seen again, though Officer Boggan went to the edge of the weed patch and looked for him. Shortly thereafter, a car came out from the gravel road in the vicinity of the weed patch and Officer Boggan ran out and pointed his shotgun at the occupant of the car and ordered him to stop. The driver of the car, who is the appellant here, got out on the driver's side, on order of Boggan, and walked down and stood beside the car.

Both men were brought around on the right side of the police car. While Officer Boggan held the shotgun on the two prisoners, Bailey went around the back of the buildings and investigated and found that none of the buildings had been forcibly entered. When Bailey returned to where Lacaze and Goff were, Boggan gave the shotgun to Bailey, who held it on the two men while Boggan called for help from detectives. Both men stated to the officers that they knew each other and had come to Jackson together, but they said they did not know the name of the man who got away. Upon being asked by the officers what they were doing at the shopping center, Goff replied that he was "looking for where a girl lived." Officer Bailey could identify only Goff as one of the men whom he had seen in front of the drugstore.

Within ten minutes, Detectives Sanders and Freeman arrived. When they arrived they found the appellant standing in front of his car or the police car and one of the officers had him covered with a shotgun "at port shoulder." The record discloses that the detectives were informed by the police officers as to what they had seen. Based on what was told them by the officers, Detective Fred Sanders placed the appellant under arrest. The

detective at this time was standing in front of his car. Detective Sanders testified that all he had to go on was what the policemen had told him and that he placed appellant under arrest for investigation of burglary. Appellant testified that he asked for permission to cut off the lights of his car so as not to run the battery down, and this he was permitted to do. The keys to the trunk of the car were obtained by the detectives, the trunk was opened, and a search was made by them. Detective Sanders assisted in unloading the trunk of the car, in which the detectives found an oxygen tank, such as is used by doctors, and an acetylene torch. There was a small tool box in the back in which there were wrenches. There was also a blue suitcase which contained a tube, cutting torches and gauges for the tanks. None of this was hooked up for use or connected. Also in the car were a wrecking bar, a keyhole saw, a five pound sledge or wrecking hammer and a jack, tools, wrenches, pliers, one pair brown cloth gloves, one roll of rubber tubing, two fusees such as are placed beside stalled or wrecked automobiles at night to warn travelers using the highway, and other small items.

The record discloses that the appellant was detained subject to being arrested; that appellant was arrested before the officers searched his automobile. The record shows that on cross-examination Detective Sanders first stated that he arrested the appellant for investigation of burglary. Subsequently he said he arrested him for burglary. The proof reveals that ultimately the appellant was indicted for possession of burglar's tools.

The cross-examination of Detective Sanders discloses the following:

Q. You detained him subject to being arrested. And what you based your arrest on was what you found in the back of his car.

A. No, sir. The man was already under arrest, as I said, Mr. Shelton, before that. I arrested the man

before we searched his automobile. I told him — I pointed to him and Mr. Goff, that they was under arrest.

Q. Yes, sir, but you had no charge to arrest him on, did you?

A. Under the circumstances, yes, sir.

Q. What?

A. The circumstances prevailing in the case there as shown by Officer Bailey.

Q. You were holding him but you had made no arrest. You were holding him for a charge. Is that true?

A. Yes, sir.

Q. You detained him there until you could determine what had happened.

A. Yes, sir.

Q. And when you found these tools you charged him with possession of burglary tools.

A. Yes, sir.

The cross-examination of Police Officer Robert Bailey discloses the following facts:

Q. All right. Now, at the time Officer Boggan in your presence stopped the Defendant with this sawed off shotgun, what crime or misdemeanor, if any, had the Defendant committed?

A. He hadn't committed any at the time then.

Q. He hadn't committed any?

A. No, sir.

Q. All right, sir. Well, did he commit any at any time in your presence?

A. Well, he was — we found possession of burglary tools on him, in his car.

Q. I am trying to direct you, though, Officer . . . .

A. Yes, sir.

Q. To the time when you stopped him. When you stopped him, did you have any reasonable grounds to believe that he was committing a crime or a misdemeanor?

A. Well, it is very suspicious of a car coming out at that time of morning when we had seen the other two and just as soon as Office (sic) Boggan stopped him Goff stated he did know him.

Q. Insofar as you know at that time can you tell the jury what offense, if any, that this Defendant had committed to cause you to stop him?

A. Well, he was just a suspicious character. I mean, a suspicious car. . . .

Q. You didn't have any specific charge at that time against him?

A. No, sir.

There is only one controlling issue in the case at bar, and that is: Did the arresting policemen, Bailey and Boggan, have reasonable grounds upon which to arrest the appellant? It is to be noted that this appellant was arrested, not because of any misdemeanor or felony committed or about to be committed in the presence of the arresting officer, Detective Sanders, but, solely on information which had been given to him by the policemen, Bailey and Boggan. Officers Bailey and Boggan could not and did not testify that they had ever seen the appellant with Goff or the other man who was in front of Holloman's Drugstore.

 █ The record does not disclose that the appellant ever ran away from the police officers. The proof wholly fails to disclose, except subsequent to the arrest and incarceration and during the trial of this appellant, that he was with Richard Goff. It is clear therefore that the probable cause which the state urges that the detective had when arresting the appellant amounted to nothing more than suspicion, and that this suspicion was not based upon what was done in the presence of the arresting officer, but what the arresting officer was advised had taken place. There was no overt act on the part of the appellant which could furnish the detective

with probable cause to arrest him until after they had searched appellant's automobile.

The basis upon which the officers arrested appellant was that "at approximately 1:35 or 1:40 in the morning a man didn't have any business being in there where he was."

We pointed out in Lewis v. State, 198 Miss. 767, 23 So. 2d 401 (1945), as follows:

The arrest of Mattie Lee Lewis was illegal for the reason that the sheriff had no warrant therefor and she had not committed any crime in his presence, consequently the search of her person, by means of which the key to the room containing the whiskey was found, was illegal and therefore the evidence obtained thereby should have been excluded. . . . (198 Miss. at 774-75, 23 So. 2d at 402.)

In Adams v. State, 202 Miss. 68, 30 So. 2d 593 (1947), when considering Mississippi Constitution section 23, we said, "we must bear in mind that provisions for search and seizure are construed strictly against the State. . . ." (202 Miss. at 76, 30 So. 2d at 597.)

This wise and ancient rule of law has been reaffirmed many times by the decisions of this Court. See Elardo v. State, 164 Miss. 628, 145 So. 615 (1933); Fletcher v. State, 159 Miss. 41, 131 So. 251 (1930); Bird v. State, 154 Miss. 493, 122 So. 539 (1929); Burnside v. State, 144 Miss. 405, 110 So. 121 (1926).

It is unnecessary for us to consider if error was committed by the admission in evidence of a prize bar and a pair of gloves, which were found some two hours subsequent to appellant's arrest, in the weed patch through which one of the two men had fled. Neither is it necessary for us to determine whether error was committed in permitting detailed questioning of appellant's past convictions.

Realizing that this appellant has a criminal record, and that his testimony lacks the ring of sincerity,

nevertheless we cannot find from the proof in this case that the officers had probable cause to believe that a burglary had been committed or was about to be committed when they stopped the appellant as he slowly drove his car down Dale's Lane, removed him from his car, and subsequently arrested him. It follows, therefore, that the search of the automobile without a search warrant was illegal and in derogation of appellant's constitutional rights, as guaranteed by Mississippi Constitution article 3, sections 14 and 23. See One 1948 Pontiac Automobile v. State, 221 Miss. 352, 72 So. 2d 692 (1954); Gause v. State, 203 Miss. 377, 34 So. 2d 729 (1948); Adams v. State, 202 Miss. 68, 30 So. 2d 593 (1947); Fulton v. City of Philadelphia, 168 Miss. 30, 148 So. 346 (1933); Sellers v. Lofton, 149 Miss. 849, 116 So. 104 (1928).

For the foregoing reasons, the judgment of the circuit court is reversed and the appellant is discharged.

Reversed and appellant discharged.

*Gillespie, P. J., and Rodgers, Inzer and Smith, JJ.,* concur.