529 So.2d 546 (1988)
Ronald J. ROOKS and Greg L. Montee
v.
STATE of Mississippi.
No. 57591.
Supreme Court of Mississippi.
May 11, 1988.
Rehearing Denied August 10, 1988.
*548 Howard Dyer, III, Rabun Jones, Dyer, Dyer, Dyer & Jones, Greenville, Tommy McWilliams, Townsend, McWilliams & Holladay, Indianola, for appellants.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Deirdre D. McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and SULLIVAN and ZUCCARO, JJ.
HAWKINS, Presiding Justice, for the Court:
This case involves an appeal from the Circuit Court of Leflore County wherein Ronald J. Rooks and Greg L. Montee were found guilty of possession of more than one kilogram of marijuana (156,567 grams). Rooks was sentenced to 20 years in the Mississippi Department of Corrections (MDOC) and ordered to pay a fine of $250,000. Montee was sentenced to serve a term of 20 years in MDOC and pay a fine of $100,000.
Rooks and Montee appeal assigning as error that certain evidence admitted at trial should have been suppressed, that the trials should have been severed, that venue was not proven, and that the State failed to make proper discovery. Finding no merit in any of these assignments, we affirm.

FACTS
Mark Henderson was an employee of Better Flying, Inc., an aerial application business located on the southeast end of the taxiway at the Indianola airport. The Indianola airport is located four miles northwest of Indianola and has a concrete runway 7,000 feet long, which is longer than average for a town with this population. Around 11:00 a.m. on September 17, 1984, Henderson noticed a brown Oldsmobile approaching their business trailer. Henderson had two years training in criminal justice at Moorhead Junior College, had worked for the sheriff's office in Sunflower County as a radio dispatcher, and had ridden with patrolling officers, and had witnessed drug "pickups" and ensuing arrests. He became suspicious and watched the car and its two white male occupants. After the car turned almost completely around on the parking apron, the passenger stepped out. This man looked around and walked over behind the office into a grassy area, picked up two black garbage bags, carried them to the car and placed them in the trunk. The car then sped away from the airport. As the car left, Henderson recorded the Mississippi tag number: BPD 946. Henderson contacted Sunflower County Sheriff Jack Sessums, told him what he had seen, described the car and gave him the tag number. Because Henderson had watched the incident through some blinds, however, he could not give facial descriptions. He only knew they were two white males.
After Henderson's call, Sheriff Sessums determined from relaying the tag number to Jack Matthews, a dispatcher of the Mississippi Highway Patrol, that the car was registered to Mims Rental Agency in Greenwood. Sessums radioed his deputy Marvin Farmer to stop the car and detain the two men until he could get there. Farmer traveled to Highway 82, the main thoroughfare between Indianola and Greenwood to watch the traffic. The fourth car passing fit the description and had the tag number. Farmer stopped the car approximately one-half mile from where he had first spotted it. Montee was driving the car and Rooks was the passenger. Farmer asked Montee to see his driver's license, whereupon Montee stepped out of the car and asked what was wrong. Farmer asked again to see Montee's license, which Montee then gave him. Farmer then asked if he could search the car. Montee responded, "Sir, I don't have a key. If I did, you would still have to have a search warrant. I'm not going to open my trunk." He further informed Farmer that he had rented the car because he had a truck in Greenwood that was broken down. At this point Rooks stepped out of the car, dropped something, put his foot on it, turned with a movement similar to extinguishing a cigarette, then took a step toward Farmer. Farmer who had recently had back surgery was in fear of *549 Montee and Rooks and therefore arrested them.
In the preliminary hearing to determine if the officers had probable cause for the subsequent searches, Farmer testified that before he had put the cuffs on Mr. Rooks, he bent down to pick up the key and that as he bent down, he smelled marijuana. Farmer communicated this information to Sheriff Sessums, who later arrived with a search warrant for the car. Using the key that Rooks had rubbed into the ground, the trunk was opened and the officers found two black garbage bags with duct tape around them containing marijuana.
Doug Petrari, of the Mississippi Bureau of Narcotics (the Bureau), while in Jackson, heard conversations on the Civil Defense telephone between the Sunflower County Sheriff's Department and the Greenwood office of the Highway Patrol concerning the incident at the airport. He relayed this information to Agent Richard Oakes in the Greenwood area, who called Sheriff Sessums for more information. Oakes, after being informed about Henderson's observation, was told that the Oldsmobile was registered to Mims Rental Agency. Both Jack Matthews, the Mississippi State Patrol dispatcher, and Oakes separately talked with Betty Mims (Mims) of Mims Rental Agency. Mims informed Trooper Matthews and Oakes that around 10:00 or 10:30 a.m. Rooks had rented a brown 1984 Oldsmobile with tag number BPD 946. Rooks had told Mims that he was from Missouri and staying at the Holiday Inn in Greenwood. Mims also stated that when Rooks left, he motioned for someone to follow him. She looked out of a window and saw a black Chevrolet pickup with white camper and out of state tag follow Rooks.
Matthews called the Holiday Inn to determine if Rooks was registered there. He also asked the management at the Holiday Inn what the tag number of the vehicle was that Rooks had registered. Matthews then ran the Missouri tag number and relayed the information to the Sunflower County Sheriff's Office and to his supervisor.
When Oakes reached the car, which had been stopped around Moorhead, Sheriff Sessums was also arriving with a search warrant which produced the two bags of marijuana. Rooks and Montee were taken to Indianola where they were searched. In frisking Montee, Deputy Charles Smith found two keys to Room 403 at the Holiday Inn in Greenwood. Oakes then traveled to Greenwood where Judge Peeples granted a search warrant for the black Chevrolet Silverado pickup located at the Holiday Inn. Around 1:15 p.m. Artie Hitchins (Hitchins), of the Greenwood Police Department, was requested by Matthews to travel to the Holiday Inn to watch the pickup. Leflore County Sheriff Ricky Banks and Hitchins had walked up to the truck to examine it and could smell marijuana. They could also see many articles in the camper through cracks in the curtains. When Oakes arrived with a search warrant about 5:30 p.m., Hitchins opened the cab with a "slim jim." The officers had no key to the camper. They were informed by James Stevens, chief of the Greenwood Police Department, who also owned a camper of this model, that there were very few keys for this model camper. Stevens then used his key to open the camper. Upon opening the camper, there was a strong odor of marijuana. Because a crowd had gathered, the pickup was towed to the Leflore County Sheriff's Department to be inventoried.
In the rear of the truck, the officers found many articles, primarily 14 bags of marijuana containing a total weight of 156,567 grams or around 345.1 pounds. The marijuana had blankets lying across it. On top of the blankets were found bags containing identification of both Rooks and Montee. Also found in the back of the truck was a book listing all police frequencies nationwide, two radio scanners, two radios used to communicate on aircraft frequencies, a walkie-talkie, a citizens band radio, a radar detector, a sack with batteries, curtains, a life raft, a bladder auxiliary fuel tank for an airplane, three life jackets, a flare, two flashlights and blankets, folding lawn chairs, an empty gas can, step stool and articles of clothing. The scanners, when later checked to see what channels *550 for which they were programmed, had been set for the frequencies of the Greenwood Police Department, the statewide police department channel, the statewide sheriff's department channel, the Sunflower sheriff's department, the Indianola police department and Mississippi Highway Patrol frequencies.
The next morning Oakes and Sheriff Banks transported the bags to the Mississippi Crime Lab in Batesville. Joe Lee Williams, of the Mississippi Crime Lab, determined that the substance was marijuana and determined that the total weight was 156,567 grams or around 345.1 pounds.
After the pickup was emptied and inventoried, Louis Grones, of the Greenwood Police Department, a fingerprint expert, thoroughly examined the pickup truck for fingerprints. He found Montee's prints on the outside of the window of the left door, on a cassette inside the truck, on a Cheeto's bag inside the truck and on an atlas inside the truck. He found Rooks's prints on the outside of the window on the right door. Grones further found both Rooks's and Montee's prints on duct tape used to hold the curtains to the windows inside the camper. On October 1, 1984, Grones and Oakes traveled to the Crime Lab to remove the outer bags from the marijuana in order to examine them for prints. Grones, however, did not thoroughly examine the bags for prints because too many people had handled them.
Both Rooks and Montee were indicted by the Leflore County grand jury for possession of the marijuana found in the pickup truck in Greenwood. On or about March 16, 1985, Rooks and Montee filed a joint discovery request. Thereafter, on March 22, 1985, the State responded to discovery by disclosing several items. Not included in the items were fingerprint evidence from the pickup. Rooks filed a motion to sever the trial on April 2, 1985. Rooks' motion and a similar motion brought by Montee were presented to the court on the morning of trial, April 3, 1985. The court first refused to hear arguments, but did concede to listen to argument on the motions. The circuit judge nevertheless overruled both motions after discovering that the State was going to only introduce the marijuana seized from the pickup.
During the course of the trial, as Louis Grones, the State's fingerprint expert, was about to testify, the defense interposed an objection, believing they were not offered the fingerprint evidence during discovery. The State, however, brought witnesses before the court who stated that the evidence was offered to both defense counsel to which Montee's counsel rejected. Rooks' counsel, however, stated that he had no recollection of any similar event. The court, apparently believing the evidence was offered to defense counsel and rejected, allowed Grones to testify.
After both sides had rested the defense objected to State's Instructions S-1 and S-2 because the instructions did not state that the offense occurred in Leflore County. The trial court overruled the objections giving the instructions to the jury. Then on April 4, 1985, both Rooks and Montee were found guilty and convicted. They have appealed.

VALIDITY OF SEARCH OF OLDSMOBILE AUTOMOBILE
Rooks and Montee have filed separate briefs. Both of them first claim that the location and subsequent search of the pickup truck in Greenwood resulted from their illegal arrest and illegal search of the Oldsmobile automobile, which Montee was driving and Rooks had rented from Mims Rental Service. Additionally, Rooks asserts that even though the evidence resulting from the search of the car had been suppressed by a circuit judge in a pre-trial motion, the trial judge's allowing Henderson to testify prejudiced the defendants before the jury by testimony implicating the defendants with possession of marijuana in Sunflower County.[1] It is correct, *551 of course, that if the search of the Oldsmobile was illegal, and also that without the information from Henderson used for this search, there would have been no basis for a subsequent search and seizure of the pickup truck, then the Leflore County search and seizure was invalid as well. Wong Sun v. U.S., 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); White v. State, 507 So.2d 98 (Miss. 1987).
The first question before us, then, is whether the search of the Oldsmobile was illegal, or as the State contends, legal. If the search of this car was legal, regardless of the circuit judge's pre-trial suppression ruling, no "fruit of the poisonous tree" error was committed in offering evidence of the Leflore County search of the truck. Rooks and Montee contend that manifestly the Sunflower County search of the car was illegal because the officers failed to have that "probable cause" to do so, which has been delineated in numerous cases in this Court as well as the Federal courts. We disagree.
Our inquiry begins with the 4th Amendment of the U.S. Constitution and Article 3, Section 23 of our Mississippi Constitution, which, respectively state:
AMENDMENT IV  SEARCHES AND SEIZURES
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
United States Constitution.
Section 23. The people shall be secure in their persons, houses, and possessions, from unreasonable seizure of search: and no warrant shall be issued without probable cause, supported by oath or affirmation, specially designating the place to be searched and the person or thing to be seized.
Article 3, Mississippi Constitution.
Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), held that the due process clause of the 14th Amendment to the U.S. Constitution gave 4th Amendment protection in state courts as well. Until Mapp, the validity of all searches and seizures by law enforcement officers in this State was determined solely by Section 23 of our own Constitution. Post Mapp search and seizure questions in this Court have been answered by examination of both the U.S. and our own Constitution. While we are bound by the interpretation given by the Federal courts to the 4th Amendment, and indeed have applied their rationale in many of our decisions interpreting Section 23, we have nevertheless reserved unto this Court the prerogative to interpret Section 23 differently from the interpretation given the 4th Amendment by Federal courts. Penick v. State, 440 So.2d 547 (Miss. 1983). In Penick v. State, we gave some of the reasons for reserving to our State courts the authority to interpret Section 23 in our own way. Research in this case fortifies this view. The reflective reader cannot fail to be impressed by the consistent wisdom shown by our predecessors on this Court in their examination of this at times extremely difficult question. This Constitutional right guaranteed to all citizens of this State has been carefully guarded by Judges who were lifelong residents of this State, profoundly cognizant of societal needs and individual rights. We retain unto ourselves the sole interpretation of our own Constitution.
The judicial history distinguishing constitutional requirements for search of motor vehicles from stationary objects begins in the Federal courts with Carroll v. U.S., 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790 (1925), and in this State with Moore v. State, 138 Miss. 116, 103 So. 483 (1925). Both involved searches of automobiles for intoxicating liquor, in Carroll for *552 a violation of the National Prohibition Act, and in Moore for violation of our Intoxicating Liquors statute. Carroll held that federal officers having "probable cause" that intoxicating liquor was being transported in a motor vehicle could search it without first obtaining a search warrant without violating the 4th Amendment. Moore v. State held constitutionally valid Section 2, Ch. 244, Laws of 1924 (presently Miss. Code Ann. § 99-27-21) authorizing a law enforcement officer to search a motor vehicle (as well as boats or aircraft) for intoxicating liquor without a warrant when he "has reason to believe and does believe that intoxicating liquor is being transported in violation of law..."
Moore v. State, supra, while recognizing this State was not bound to follow Carroll in interpreting Section 23, 123 Miss. 116, 103 So. 484, nevertheless adopted the reasoning of the U.S. Supreme Court in Carroll in its interpretation of the 4th Amendment by holding that when a law enforcement officer had "probable cause" to believe intoxicating liquor was being transported in violation of state law, a warrantless search could be made. And, further that the determination of probable cause was a judicial question to be determined by the court in each case. 138 Miss. at 116, 103 So.2d at 484. See also Salisbury v. State, 293 So.2d 434 (Miss. 1974); and Anthony v. State, 220 So.2d 837 (Miss. 1969).
Carroll's vitality is still recognized by the U.S. Supreme Court. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); U.S. v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). It is doubtful that this Court would have held that the facts of Carroll constituted "probable cause" for a warrantless search under § 23. Gardner v. State, 145 Miss. 210, 110 So. 588 (1926).[2]
Montee and Rooks do not question the authority of law enforcement officers  when they do in fact have probable cause to do so  to stop a motor vehicle and search it, or as in this case, stop and detain the vehicle until a search warrant can be issued by a magistrate. The sole basis for their assertion that the Leflore County search was illegal was that the Sunflower County law enforcement officers had no probable cause to stop the Oldsmobile to make any search of it, with or without a warrant.
The fervid enforcement over the years of our intoxicating liquors statutes by local law enforcement officers, directed with a special enthusiasm to our darker complexioned citizens, has given this Court ample opportunity to become expert in applying the constitutional safeguard of § 23.
No attempt was made by this Court to refine the meaning of probable cause, or devise some formula to discern it, but rather in each case we made an ad hoc, empirical examination of the facts, and thereby judicially determined whether or not the constable, deputy sheriff, town marshal, or whomever did in fact have probable cause to stop and search the vehicle. Research of these cases reveals our predecessors did an outstanding job.
In Moore v. State, supra, we held that a telephone call from a law enforcement officer in one county telling an officer in another *553 county that the defendant was coming into his county over a certain bridge with a load of whiskey furnished probable cause. In Gardner v. State, supra, as above noted (Footnote 2), we held the knowledge of the officer of past conduct did not furnish probable cause for that particular search. In McNutt v. State, 143 Miss. 347, 108 So. 721 (1926), we held that it was a judicial inquiry for a court to determine whether or not probable cause existed, and not what the law enforcement officer thought. Sellers v. Lofton, 149 Miss. 849, 116 So. 104 (1928), held loud talking and boisterous behavior from a car being driven late at night did not furnish probable cause for searching the car for whiskey. Perry v. State, 154 Miss. 212, 122 So. 398 (1929), reaffirmed the right of the driver of the car to be given the name of the person informing the law enforcement officer of his illegal transportation of liquor, and such alleged informant should be permitted to testify in court whether he did in fact give this information to the officer. In King v. State, 151 Miss. 580, 118 So. 413 (1928), the sheriff had a search warrant to search the premises of the local bootlegger. En route he met King and another local imbiber leaving the bootlegger's house. The sheriff stopped the car, and because he was suspicious of the occupants, opened a curtain and took a peek inside, and, just as he suspected, saw a keg of corn whiskey. We held no probable cause existed for the search.
In Chrestman v. State, 148 Miss. 673, 114 So. 748 (1927), a town marshal, after going to bed, heard a car being driven without a muffler. He investigated, and saw three men stopped, purchasing gas at a filling station. He bawled them out for making the racket, and noticed that two of them apparently had been imbibing, but were violating no law. He searched the car and found a four-gallon keg of whiskey. We held that no probable cause existed for this search.
In Jones v. State, 170 Miss. 741, 155 So. 416 (1934), the constable heard from a young man that some individuals were in a car pouring from a jug into glasses what looked to him like whiskey. As he approached the car, the constable heard cursing and hollering, and one individual was outside brandishing a pistol. We held this constituted probable cause that whiskey was in the car.
In Lenoir v. State, 159 Miss. 697, 132 So. 325 (1931); Smith v. State, 160 Miss. 56, 133 So. 240 (1931), we held that general information that an individual hauled whiskey through an area was not probable cause to search his car. In Walters v. State, 143 So. 847 (Miss. 1932), we held two suspicious individuals riding slowly through town at night in a heavily loaded car with a flat tire did not furnish probable cause to search the car when it stopped, and the individuals got out to inspect the flat. In Elardo v. State, 164 Miss. 628, 145 So. 615 (1933), one Weaver called the sheriff's office and told them he had heard that a truckload of whiskey was stalled out on a flooded area on the highway. We held this did not constitute probable cause for stopping the truck when it was pulled and driven out, and searching it.
In Pickle v. State, 172 Miss. 563, 160 So. 909 (1935), we held that an anonymous letter to the sheriff through the mail did not constitute probable cause for a search warrant of the defendant's premises. We adopted this same reasoning in Terry v. State, 252 Miss. 479, 173 So.2d 889 (1965), when we held that an anonymous telephone call to the sheriff that the defendant would be driving a car on a certain road did not constitute probable cause to search the vehicle. We held the information must be from a "credible person," and reiterated our previous holdings that probable cause was a judicial inquiry.
Following Mapp v. Ohio, supra, this Court made a determination of probable cause in light of the 4th Amendment standards; see O'Bean v. State, 184 So.2d 635 (Miss. 1966); most notably set forth in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); and Spinelli v. U.S., 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), in which the U.S. Supreme Court formulated probable cause in a "two-prong" test. See: Washington v. State, 382 So.2d 1086 (Miss. 1980); Hailes *554 v. State, 268 So.2d 345 (Miss. 1972); Barker v. State, 241 So.2d 355 (1970); Strode v. State, 231 So.2d 779 (Miss. 1970); Wolf v. State, 260 So.2d 425 (Miss. 1972).
In Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court recognized that the Aguilar and Spinelli tests, while helpful, realistically could be no more than guides in determining the amorphous probable cause, and attempts by courts to make them into a rigid formula had proved quixotic.
The Court adopted instead a "totality of the circumstances" approach to each case, dealing with "probabilities," not "technical," but "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." 462 U.S. 230-231, 103 S.Ct. at 2328.
Further, the Court noted, probable cause is a
fluid concept  turning on the assessment of probabilities in particular factual contexts  not readily, or even usefully, reduced to a neat set of legal rules... . Rigid legal rules are ill-suited to an area of such diversity. `One simple rule will not cover every situation.'
462 U.S. at 232, 103 S.Ct. at 2329.
Reiterating, the Court stated:
The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for concluding" that probable cause existed. [cite omitted] We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from Aguilar and Spinelli.
462 U.S. at 238-239, 103 S.Ct. at 2332.
The Court said balanced judgment was the needed ingredient.
"Fidelity" to the commands of the Constitution suggests balanced judgment rather than exhortation. The highest "fidelity" is achieved neither by the judge who instinctively goes furthest in upholding even the most bizarre claim of individual constitutional rights, any more than it is achieved by a judge who instinctively goes furthest in accepting the most restrictive claims of government authorities. The task of this Court, as other courts, is to "hold the balance true," ...
462 U.S. at 241, 103 S.Ct. at 2334.
As noted by the U.S. Supreme Court in U.S. v. Ross, supra, 456 U.S. 808, 102 S.Ct. 2164, the probable cause that would justify a warrantless search of a motor vehicle must be based upon information which would be sufficient to justify a magistrate to issue a search warrant. We have also held that the requisite probable cause to make a valid search without a search warrant must be of sufficient strength as would have authorized a magistrate to lawfully issue a search warrant. See: Wolf v. State, supra; Pass v. State, 193 So.2d 119 (Miss. 1966).
Illinois v. Gates, while using more elegant language, has directed courts of this nation to follow the same procedure for determining probable cause that this Court essentially followed over 60 years on our own. We likewise have specifically adhered to the mandate of Illinois v. Gates in Lee v. State, 435 So.2d 674 (Miss. 1983); Hall v. State, 455 So.2d 1303 (Miss. 1984); Stringer v. State, 491 So.2d 837 (Miss. 1986); and McCommon v. State, 467 So.2d 940 (Miss. 1985). See also Edlin v. State, 523 So.2d 42 (Miss. 1988), where this Court again addressed probable cause to search an automobile in a different factual context.
It is thus incumbent upon all judges of this State to scrupulously examine the facts in each case, make a careful evaluation, and in their own best judgment gleaned from life's experiences determine *555 whether probable cause existed for a particular search or issuance of a magistrate's search warrant. It is not what some officer thought, it is not some conduct that was simply unusual, not some conduct which simply roused the suspicion that illegal activity could be afoot when there was at the same time just as likely a possibility that nothing at all illegal was transpiring. Rather, it must be information reasonably leading an officer to believe that then and there contraband or evidence material to a criminal investigation would be found. While no more than this will be required, at least this much will be demanded. The Aguilar and Spinelli tests remain valuable guides, but they are not all encompassing.
We have no difficulty in determining probable cause existed in this case for law enforcement officers in Sunflower County to stop and search the Oldsmobile automobile.
Two strange individuals drove to an area of a small town airport that cars did not usually travel. They apparently knew what they were looking for and where it was located beside a runway over a mile in length, because they drove to one particular area. An occupant got out of the car and walked directly to a place in the grass, picked up two garbage bags eighteen inches by ten inches, and put them into the trunk of the car. The car immediately sped off. This car did not simply drive to this particular spot, turn around and leave; it stopped, and two bags in the grass were retrieved. This activity furnished a classic case of probable cause that these men were carrying contraband. They were observed by a thoroughly reliable person, with some experience in law enforcement, who reported the entire activity to the sheriff.
Miss. Code Ann. § 41-29-153(b)(4) authorizes officers to search vehicles for illegal drugs.[3]
State v. Thrash, 257 So.2d 523 (Miss. 1972), and Allison v. State, 274 So.2d 678 (Miss. 1973), involved suspected individuals going into package liquor stores, emerging with a package or boxes, putting them into cars, and then driving into a dry county. We held this information conveyed to an officer of the dry county constituted probable cause for searches.
The information conveyed by Henderson furnished an equally compelling conclusion of probability that contraband was being transported.

VALIDATION OF SEARCH OF CHEVROLET PICKUP
Even without considering the marijuana found in the Oldsmobile, the circuit judge was correct in his ruling that the marijuana found in the pickup was admissible. While it is true that Oakes mentioned in his affidavit for the search warrant for the pickup the 22 pounds of marijuana found in the Oldsmobile, the officers nevertheless independently discovered the pickup and had independent probable cause to search the pickup. The United States Supreme Court Nix v. Williams, 467 U.S. 431, 441, 104 S.Ct. 2501, 2508, 81 L.Ed.2d 377 (1984), quoting Silverthorne Lumber Co. v. U.S., 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), stated: "If knowledge of such facts is gained from an independent source, they may be proved like any others ..." The testimony showed that Rooks and Montee were at the Indianola airport around 11:00 a.m. Henderson, at the airport, immediately called Sheriff Sessums. Sheriff Sessums radioed Deputy Farmer who shortly thereafter stopped Rooks and Montee in the rental car. Further testimony showed that Trooper Matthews and Agent Oakes separately were discovering that a pickup may have been involved. Trooper Matthews further had other troopers searching the Holiday Inn parking lot for the pickup. Although we do not know the exact time the pickup was discovered, *556 there is testimony by Officer Hitchins of the Greenwood Police Department that he watched the pickup from 1:15 p.m. until Agent Oakes arrived at 5:30 p.m. Further testimony from Hitchins stated that when he arrived at the pickup, other officers were already present. There is also testimony in the record from Hitchins, Leflore County Sheriff Banks and Chief James Stevens of the Greenwood Police Department that they could smell marijuana close to the pickup. They also testified that by looking through cracks between the curtains they could see that inside camper there were various articles on top of blankets covering something inside the camper. Furthermore, while Agent Oakes' affidavit for the warrant did include evidence of the 22 pounds of marijuana found in the rental car, this is not fatal. By removing this information, the affidavit still contains enough information for the magistrate to have issued the search warrant. Cf. Walker v. State, 473 So.2d 435 (Miss. 1985). We thus conclude there is no merit in Rooks' and Montee's assignment of error that the marijuana found in the pickup is inadmissible.

TRIAL COURT'S DISCRETION TO GRANT SEVERANCE
Miss. Code Ann. § 99-15-47 requires that Rooks and Montee move for severance before arraignment. Montee's counsel believes that the right to move for severance had been reserved. The record, however, discloses no such reservation. Therefore, it is within the trial court's discretion whether the severance should be granted. Rule 4.04, Mississippi Uniform Rules of Circuit Court Practice; Walker v. State, 430 So.2d 418 (Miss. 1983); Hicks v. State, 419 So.2d 215 (Miss. 1982); Turner v. State, 415 So.2d 689 (Miss. 1982). Because it is not apparent that the trial court abused its discretion in overruling the motions for severance, we affirm the trial court's judgment.

LOUIS GRONES, THE FINGERPRINT EXPERT WAS PROPERLY ALLOWED TO TESTIFY
The defense believes that it was not offered the fingerprint evidence. The trial judge, however, questioned both assistant district attorneys and Agent Oakes, apparently determined that defense counsels were offered the evidence but rejected it because they believed it was duplicates of evidence which they already had. Furthermore, neither Rooks nor Montee requested a continuance in order to further examine the fingerprint evidence. They cannot now complain. Griffin v. State, 504 So.2d 186 (Miss. 1987); Cabello v. State, 471 So.2d 332 (Miss. 1985); Box v. State, 437 So.2d 19 (Miss. 1983) (Robertson, J., specially concurring).

VENUE WAS PROVEN TO BE IN LEFLORE COUNTY
Rooks and Montee believe that Instructions S-1 and S-2 are fatal and require reversal because they did not state the offense occurred in Leflore County. Venue, however, was proven by the many officers' testimony that the pickup was discovered at the Greenwood Holiday Inn in Leflore County. The defense presented no evidence that the pickup was discovered anywhere except Leflore County. The only evidence proven by the many officers' testimony that the pickup was discovered at the Greenwood Holiday Inn in Leflore County. The defense presented no evidence that the pickup was discovered anywhere except Leflore County. The only evidence presented of an offense in Sunflower County was the testimony of Henderson about the two individuals in the Oldsmobile picking up two bags of unknown substance from the Indianola airport and that the two individuals, Rooks and Montee, were arrested around Moorhead. The State presented no evidence of 22 pounds of marijuana discovered in Sunflower County. Rooks and Montee presented no evidence to rebut the State's evidence that the offense was committed in Leflore County. See Fairchild v. State, 459 So.2d 793 (Miss. 1984). Rooks and Montee were not entitled to a venue instruction unless and until they presented some evidence that venue was not properly in Leflore County. Fabian v. State, 284 So.2d *557 55 (Miss. 1973); Harper v. State, 478 So.2d 1017 (Miss. 1985).
AFFIRMED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] In a pre-trial motion Judge B.B. Wilkes of the Fourth Circuit Court District suppressed all evidence pertaining to the two bags of marijuana found in the trunk of the Oldsmobile. The circuit judge who tried the case was of the opinion that excluding the two bags found in the Oldsmobile, the officers had probable cause to search the pickup and the evidence found was admissible.
[2] In Carroll, the federal officers had attempted on September 20, 1921, to purchase some whiskey from Carroll, Kiro and Krusko. The three men left the apartment in an Oldsmobile to get the whiskey, but Krusko returned later and said they were unable to get any. The three may have gotten suspicious. On December 15, 1921, the officers saw Carroll and Kiro in the same automobile on the Grand Rapids-to-Detroit highway, 152 miles distance. The officers stopped the car and searched it, and found a number of bottles of liquor, after breaking a partition in the rumble seat. The U.S. Supreme Court, over a strong dissent, found "probable cause," noting that this particular geographical area of the United States was one of the "most active centers for introducing illegally" intoxicating liquors into this country" Gardner v. State involved a search by a law enforcement officer of a car around midnight, because the officers had been told 90 days previously that Gardner would have liquor in his car when he came to Belzoni around midnight. The informant had bought liquor from Gardner. This Court reversed, saying the information must "be of the present," not something that happened in the past.

Indeed it is entirely possible that Federal courts would not hold the facts of Carroll constituted "probable cause" under present cases, but we need not speculate on this scenario.
[3] This section states:

§ 41-29-153. Forfeitures.
(a) The following are subject to forfeiture:
* * * * * *
(4) The bureau, local law enforcement officers, highway patrolmen, the board, or the State Board of Pharmacy have probable cause to believe that the property was used or is intended to be used in violation of this article.