349 So.2d 1059 (1977)
Virginia CRUM
v.
STATE of Mississippi.
No. 49893.
Supreme Court of Mississippi.
September 21, 1977.
Harry L. Kelley, Jackson, for appellant.
A.F. Summer, Atty. Gen. by Frankie Walton White, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before INZER, ROBERTSON and BOWLING, JJ.
BOWLING, Justice, for the Court.
This appeal is by appellant from a conviction in the Circuit Court of Alcorn County of manslaughter and a sentence of fifteen years with six years suspended. Appellant assigns only one ground of error, as follows:
Appellant respectfully submits that the lower court erred in admitting into evidence a towel and an officer's testimony as to what he saw at appellant's home as this was the result of an illegal search and seizure made without a warrant, not as an incident to arrest and without consent of appellant.
This assignment of error necessitates a discussion of the pertinent parts of the evidence. The evidence is practically undisputed. About eight o'clock P.M., on April 19, 1974, Sheriff Ralph Lambert of Alcorn County received a telephone call from a woman who asked to speak to the sheriff. Upon ascertaining that the sheriff was on the telephone, the woman transferred the telephone to another woman who identified herself as the defendant, Virginia Crum. She told Sheriff Lambert that she had shot her husband and wanted him to come to her brother's house where she had gone to make the telephone call. She did not have a telephone at her home. Her brother and sister-in-law lived about one hundred yards from the Crum residence.
Sheriff Lambert and a deputy, Harold Mullins, went to the home of Mrs. Crum's brother. Upon arrival, Mrs. Crum handed the sheriff a pistol from her purse and told him that she had shot her husband with the gun. She further stated that her husband was still in the house. The sheriff and deputy went immediately to the Crum home, entered and found Mr. Crum lying on the living room floor near the couch. They found him to be dead. An examination was then made of the premises. The house consisted of four main rooms  a living room, *1060 kitchen and two bedrooms. On looking into one bedroom, the officers found what obviously was the result of a struggle, such as an overturned lamp and other items in disarray. In the other bedroom they found a dresser with a broken mirror and a bullet laying on top of the dresser. In the bedroom where there appeared to have been a struggle, they found a bullet embedded in the wall over the bed. They found drops of blood leading from this bedroom to the living room and to the point where Crum's body was found. These drops of blood were small at the beginning but increased in size near the body.
By the time this initial and hurried examination of the premises was made, an ambulance arrived to take charge of Crum's body.
Due to the examination of the premises and finding the two bullets, Sheriff Lambert then determined that it was necessary for him to go to the hospital where the body had been taken and examine the body. The hospital was an eight to ten minute drive from the Crum residence. Upon arriving there, it was ascertained that Mrs. Crum had been brought to the hospital, evidently by some member of her family.
The sheriff and his deputy viewed the body and found that it had received five shots  two in the chest area, two in the groin area, and one in the leg. After considering this investigative evidence along with what he had already seen in a hurried examination of the premises, Sheriff Lambert instructed Deputy Mullins to return to the Crum home and continue the investigation there. Deputy Mullins later testified that from the time they first left the Crum home until he returned was approximately twenty-five minutes.
About the same time Deputy Mullins left the hospital, Sheriff Lambert determined that he needed to secure a statement from Mrs. Crum as to what occurred surrounding the entire incident. He asked her to go to the jail with him for the purpose of securing this statement. She agreed to do so and accompanied him, without being arrested, although Sheriff Lambert stated on cross-examination that if she had refused he would have had to arrest her and take her over her objections. Upon reaching the jail, Mrs. Crum signed a "waiver of rights" form and freely gave the sheriff a written statement. After this statement was secured and signed, the sheriff confronted Mrs. Crum with the facts that were found in the bedroom and the trail of blood. She had not related to him anything that happened in the bedrooms in her written statement. According to Sheriff Lambert, she then made oral changes, and according to the evidence this was partially brought about by a towel that Deputy Mullins brought to the jail after he had gone back and completed an examination of the Crum home.
Deputy Mullins testified that upon returning to the Crum home and looking around the premises he saw a towel underneath a chair in the living room. He examined the towel and found on it what appeared to be powder burns. While there, he drew a rough sketch of the premises, showing the location of the rooms, the body, and the articles found. He returned to the jail with the towel and the sketch while Sheriff Lambert was still questioning Mrs. Crum. Later, she was arrested and charged with the murder of her husband.
The usual hearing was had out of the presence of the jury, with the attorney for appellant contending that the second trip and examination of the Crum home when the towel was found constituted an unreasonable and illegal search, and, therefore, this article of evidence was inadmissible. In overruling this contention, the lower court said: "The search, even though interrupted by some several minutes by going to the hospital to view the body, was still in the process of being made when Officer Mullins went back to complete it at a later time."
The primary question on this appeal is whether or not the second trip to the Crum home by Deputy Mullins some twenty-five or thirty minutes after leaving to view Crum's body at the hospital was a continuation of the initial permitted search *1061 and investigation, or whether or not it was an unreasonable and thereby illegal search and seizure under the provisions of the Fourth Amendment to the United States Constitution and Article 3, section 32 of the Mississippi Constitution.
Appellant relies primarily on the case of May v. State, 199 So.2d 635 (Miss. 1967), and two prior cases cited in the May opinion: Page v. State, 208 Miss. 347, 44 So.2d 459 (1950), and Lancaster v. State, 188 Miss. 374, 195 So. 320 (1940).
The May case is not applicable. There the defendant had already been taken to jail; later the officers went to defendant's home after getting the defendant's fifteen-year-old son to accompany them to the premises. The son let the officers into the house and permitted them to make a search. The Court merely held that defendant's rights against an unconstitutional search could not be waived by his son.
In Lancaster v. State, supra, defendant was convicted of killing his wife. She was found lying by the steps leading into the house, after which the sheriff came to the house and the accused made no objection to his going about the premises. Later, the accused was arrested and lodged in jail. After securing information from the physician who examined the deceased, the officer, on the next day after the homicide, made an affidavit for a search warrant, obtained it, and made a search of the premises, resulting in the finding of damaging evidence against the accused. It developed that the affidavit and the search warrant were defective. The Court then held that the search on the next day clearly was unreasonable and illegal.
In Page, supra, the search also was made the day after the homicide and the day after the sheriff examined the home of the accused without a search warrant but with permission. As in Lancaster, the Court held that this search the next day without a valid warrant clearly was illegal.
In a number of cases this Court has discussed evidence in regard to whether or not a warrantless search is unreasonable and therefore illegal. In Norman v. State, 302 So.2d 254 (1974), the Court, through Justice Broom, made several observations in this regard, although admittedly the facts in Norman were somewhat different from the facts now before the Court. In Norman, the Court said:
Several of the items in controversy here were not seized by the officers when they initially entered the house, but were seized sometime later that day after the subjects had been arrested. Ordinarily, a subsequent reentry and seizure of items after the lapse of unreasonable time renders such items inadmissible in evidence. However, in this case, the delay was occasioned by discovery of bomb devices, at which time the search was not completed until the bomb squad came and removed the bombs. While waiting for the bomb squad, officers maintained a status quo by keeping the house under constant guard and surveillance. Then the search incident to the arrest was completed and other evidentiary items taken. There was not shown any unreasonable lapse of time between the arrest of the appellant (and the immediate search incidental to the arrest), and completion of the search after removal of the bombs. The final portion of the search after reentry was merely a continuation of the original search, and cannot be considered unreasonable in any legal sense.
The Court further said:
The question of whether a search is reasonable cannot be determined by any fixed formula and the Constitution does not define what are "unreasonable" searches. Reasonableness of searches must be resolved upon the facts and circumstances of each case.
A case in point that was approved by the United States Supreme Court is Voss v. State, 198 Tenn. 135, 278 S.W.2d 667 (1955), cert. denied, 348 U.S. 965, 75 S.Ct. 526, 99 L.Ed. 752 (1955). In that case the officers admittedly had a legal right to enter the room occupied by Voss, Alice Jones and Snell without a search or arrest warrant. All three were taken into custody and carried to police headquarters and placed in *1062 jail. At the time of this arrest, various incriminating articles of evidence were found on the premises. After all officers left the premises and carried the three accused persons to jail, the officers returned to the premises and without a search warrant again made a search. At this time they found a dismantled shotgun and a money bag which clearly implicated the accused with robbery and murder. As here, Voss contended that the second entry was unreasonable and in violation of the constitutional inhibitions "against unreasonable searches and seizures." The opinion of the Supreme Court of Tennessee quoted from United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 434, 94 L.Ed. 653 (1950), where it was said:
"What is a reasonable search is not to be determined by any fixed formula. The Constitution does not define what are `unreasonable' searches and, regrettably, in our discipline we have no ready litmus-paper test. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case... . Reasonableness is in the first instance for the District Court to determine."
The Tennessee Court then said:
We cannot say that the second search of Voss' room was unauthorized and that the evidence tendered and admitted was the result of an unlawful search. It conclusively appears from the record before us that the arresting officers, having lodged their prisoners in jail, returned at once to make a further and more thorough search of the premises for evidence connecting them with the murder of Mr. Hutchinson. The time which elapsed between the arrest, the immediate search and this second search was of such short duration that we are justified in holding that the second search was merely a continuation of the first. It cannot be considered as unreasonable in any legal sense.
In State v. Downey, 104 Ariz. 375, 453 P.2d 521 (1969), the Supreme Court of Arizona had a similar set of facts before it in regard to an alleged second search and seizure. In discussing the applicable law, the Court said:
Whether Rimer's search was a new, second search, or a continuation of the search initiated by the other officers is an argument of semantics. This Court's opinion is that Rimer's search is so close in time as to be a continuation of the initial search supported by the arrest of Ross. To accept defendant's argument would be tantamount to holding that a search, once validly commenced, must continue without interruption by the same police officers who initiated it. Such a rule would itself be unreasonable... . "It must be remembered that not all searches and seizures are prohibited by the Constitution, only those which are unreasonable. At the core of the Constitutional Standard in the law of search and seizure is `reasonableness.'"
In Arwine v. Bannan, 346 F.2d 458 (6th Cir.1965), it was stated:
The Supreme Court has pointed out that it is only unreasonable searches and seizures which come within the constitutional interdict and that the test of reasonableness cannot be stated in rigid and absolute terms. Each case is to be decided on its own facts and circumstances ... What is a reasonable search is not to be determined by any fixed formula, but is to be resolved according to the facts of each case.
The hiatus of twenty minutes in the search here is hardly unreasonable, and the mere lapse of time, in and of itself, is not persuasive in determining the reasonableness of a search.
Admittedly the "fruit of the search," that is, the towel with the hole and powder burns, was damaging to appellant. Witness John Dial of the Mississippi Crime Laboratory made a detailed explanation as to how the towel had to be held over the gun for the hole in the towel and the powder marks to have been left thereon by various parts of the gun. In applying the law to the evidence, however, we cannot consider the extent of the damage done by the towel. *1063 The authorities are clear that the lower court was correct in holding that the return of Deputy Mullins to the Crum home was merely a continuation of the initial investigation permitted by the defendant. We cannot disagree with the lower court and hold that this was an "unreasonable" search and seizure. It follows that the cause must be and it is affirmed.
AFFIRMED.
PATTERSON, C.J., INZER and SMITH, P. JJ., and ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.