617 So.2d 999 (1993)
Donald Eugene McNEAL
v.
STATE of Mississippi.
No. 90-KA-1147.
Supreme Court of Mississippi.
March 25, 1993.
Rehearing Denied May 27, 1993.
Dissenting Opinion on Petition for Rehearing May 27, 1993.
*1000 F. Holt Montgomery, Jr., Pass Christian, for appellant.
Michael C. Moore, Atty. Gen., Kenneth C. O'Neal, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PRATHER, P.J., and PITTMAN and SMITH, JJ.
Dissenting Opinion by Justice Banks on Petition for Rehearing May 27, 1993.
PRATHER, Presiding Justice, for the Court:

I. INTRODUCTION
On June 6, 1986  in the Jackson County Circuit Court on change of venue to Warren County  a jury found Donald Eugene McNeal guilty of murdering his wife, Darlene. Judge Robert T. Mills sentenced McNeal to life imprisonment, and McNeal appealed. This Court reversed and remanded for a new trial after concluding that gruesome photographic evidence should have been deemed inadmissible. See McNeal v. State, 551 So.2d 151 (Miss. 1989).
*1001 At the second trial  held in Adams County  the jury again found McNeal guilty. Judge Clinton Lockard sentenced McNeal to life imprisonment. McNeal now appeals and presents numerous issues for this Court's analysis. This Court affirms.

A. Facts
The voluminous evidence adduced in the second trial is essentially the same as that adduced in the first trial. For brevity's sake, this evidence will not be recited here.[1] Instead, see this Court's recitation of the evidence in McNeal, 551 So.2d at 152-57.

B. Issues
McNeal presented nine issues for this Court's analysis:
1. DURING VOIR DIRE AT THE TRIAL BELOW, THE JURY PANEL WAS ASKED WHETHER THEY HAD ANY FRIENDS OR RELATIVES THAT HAD BEEN VICTIMS OF CRIME. PANELIST JO ANNA CASSEL FAILED TO RESPOND TO THIS QUESTION AND CONSEQUENTLY WAS ALLOWED ON THE JURY BY DEFENSE COUNSEL AT A TIME WHEN DEFENDANT HAD NOT YET EXERCISED ALL THEIR PEREMPTORY STRIKES. DURING SUBSEQUENT VOIR DIRE JUROR CASSEL ADMITTED THAT HER DAUGHTER HAD BEEN MURDERED APPROXIMATELY ONE YEAR BEFORE THE DEATH OF THE YOUNG FEMALE VICTIM IN THE INSTANT CASE. UPON THIS UNTIMELY DISCLOSURE, THE TRIAL COURT REFUSED TO STRIKE THE JUROR FOR CAUSE OR TO ALLOW DEFENSE COUNSEL TO USE THEIR FINAL PEREMPTORY STRIKE AGAINST JUROR CASSEL. UNDER THESE CIRCUMSTANCES, DID THE TRIAL COURT ERR IN ALLOWING JUROR CASSEL TO PARTICIPATE IN THE TRIAL BELOW AND IN FAILING TO GRANT DEFENDANT'S MOTION FOR A NEW TRIAL BASED ON THESE GROUNDS?
2. LAW ENFORCEMENT OFFICERS GAVE FALSE INFORMATION TO THE MAGISTRATE WHO ISSUED THE INITIAL SEARCH WARRANT FOR THE McNEAL RESIDENCE. SUCH STATEMENTS WERE KNOWINGLY OR INTENTIONALLY FALSE, OR MADE IN RECKLESS DISREGARD OF THE TRUTH. WHEN PURGED OF SUCH FALSE STATEMENTS, THE FACTS PRESENTED TO THE MAGISTRATE DID NOT AMOUNT TO PROBABLE CAUSE TO ISSUE THE SEARCH WARRANT EXECUTED ON OCTOBER 7, 1985. DID THE TRIAL COURT ERR IN ADMITTING INTO EVIDENCE VARIOUS MATTERS SEIZED IN THE SAID SEARCH?
3. DID THE LOWER COURT ERR IN FAILING TO SUPPRESS EVIDENCE SEIZED IN THE SEARCH OF OCTOBER 7, 1985 ON THE GROUNDS THAT SUCH SEARCH CONSTITUTED *1002 AN IMPERMISSIBLE "GENERAL SEARCH?"
4. DID THE LOWER COURT ERR IN ADMITTING EVIDENCE SEIZED FROM McNEAL'S AUTOMOBILE IN THE OCTOBER 7, 1985 SEARCH?
5. DID THE TRIAL COURT ERR IN PERMITTING DOCTOR PAUL GARD TO TESTIFY CONCERNING CERTAIN BALLISTICS MATTERS?
6. DID THE LOWER COURT ERR IN HOLDING THAT IT HAD JURISDICTION TO HEAR THE CASE AT BAR?
7. DID THE JURY DISREGARD ITS DUTY TO FOLLOW THE LAW REQUIRING THE STATE TO EXCLUDE EVERY REASONABLE HYPOTHESIS CONSISTENT WITH INNOCENCE, PRIOR TO RETURNING A GUILTY VERDICT?
8. DID THE LOWER COURT ERR IN REFUSING TO ADMIT THE DECEASED'S "SUICIDE NOTE" OF FEBRUARY 3, 1984?
9. THE TRIAL COURT ADMITTED INTO EVIDENCE FIVE (5) PHOTOGRAPHS OF THE VICTIM'S DECOMPOSED BODY INCLUDING ONE PHOTOGRAPH ON THE AUTOPSY TABLE. GIVEN THIS COURT'S COMMENTS ON THESE SAME PHOTOGRAPHS IN THE APPEAL FROM THE FIRST TRIAL IN THIS CAUSE, WAS THEIR ADMISSION INTO EVIDENCE UNDULY PREJUDICIAL TO DEFENDANT?
See McNeal's Brief at 2-3; McNeal's Reply Brief at 2. These issues are paraphrased and analyzed in the next section.

II. ANALYSIS

A. Issue # 1: Whether the Judge Erred in Refusing to Exclude a Juror?

1.
During voir dire, the attorneys asked prospective jurors a series of questions. The attorneys did not ask each of the prospective jurors the same questions. Indeed, the attorneys inadvertently failed to ask one of them  Jo Anna Cassel  the following critical question: Whether a member of her family has been a victim of a crime? Had the attorneys asked Cassel this question, they would have learned that her daughter had been victimized six years earlier. Be that as it may, the attorneys  both the State and the defense  were unaware of this information concerning Cassel's daughter when they accepted Cassel as a juror.
Upon accepting Cassel as a juror but before filling the entire panel, the attorneys continued to question the remaining prospective jurors:
State: Has anybody been a victim of a crime? Or anyone's family or close friend been a victim of a crime? You've already answered.
Cassel: No, I didn't. [Remember  This question was not being addressed to Cassel; she had already been accepted as a juror.]
State: Oh, you didn't. Okay. I'm sorry.
Cassel: I had a daughter that was murdered.
State: Okay. How long ago was that?
Cassel: Six years.
State: Was that here in Adams County?
Cassel: No, sir.
... .
McNeal (McNeal's attorney): Do you think that  do you feel uncomfortable about that  the fact that this is a murder case, does that have any effect on you?
Cassel: No.
McNeal: You think you could be fair?
Cassel: Yes.
McNeal: Do you feel like ... this ... murder case has any relationship to that?
Cassel: (Shook head, indicating no.)
After filling the panel, McNeal requested that Cassel be excused for cause. The judge explained his decision to deny the request:
The problem that the Court has is, she was accepted, the State has gone on and exercised its challenges and tendered twelve more to you at this time. If I allow you to go back and strike her, I can't reopen it to the State to withdraw their strikes and start over from this point of the trial, because those jurors have been excused. The Court doesn't mind doing something irregular or unusual *1003 if it's going to meet the ends of justice, Mr. Holt and Mr. Kerr. If it would meet the ends of justice, this Court wouldn't hesitate. But I just  at this point, based on what the witness has said before the Court, I would not excuse her for cause, as I've said, and I will not  I don't think the Court should remove her at this point. She said she'd be fair and impartial, so I'm going to overrule your motion to strike her at least. You do have one more strike. Of course, that person has been accepted and, as I said, the State has gone on and we've passed this lady a good ways. The logistics of trying to do it at this time to allow you to go back and strike, I would like to, but I just don't think it's the right thing to do. I think it would throw everything out of kilter. So, I'm going to overrule your motion and let you go on and strike your next defendant, whatever. You've got one more strike and you've been out, considering it. I'll give you a few minutes to decide which ones you want to strike. But I think I'm going to let her remain on the jury. She has been accepted, and I think at this point there is no grounds for the Court to change that.
Vol. IV, at 202-04. McNeal now contends that the judge erred.

2.
In their briefs, both parties discuss at great length the law which they perceive to be applicable to analysis of this issue. Neither party, however, cited Myers v. State, 565 So.2d 554 (Miss. 1990), which is dispositive.
In Myers, the defendant was being tried for unlawfully selling alcoholic beverages when the State learned that one of the jurors' husbands had been convicted of bootlegging. The State learned of this information after the State and the defense had rested but before the case was submitted to the jury for its consideration. The State requested that the juror, who failed to reveal the information during voir dire, be excused; the judge granted the request. In affirming, this Court provided instruction on analysis of such issues.
"[A] party who fails to object to the jury's composition before it is impaneled waives any right to complain thereafter." Myers, 565 So.2d at 557 (emphasis added) (citing cases). In view of this unequivocal principle, this Court could conclude that McNeal waived his right to complain about Cassel since McNeal failed to object before she was impaneled.
This Court, however, will look beyond the procedural bar  at which point, Miss. Code Ann. § 13-5-67 (1972) will be considered. This statute provides that only two circumstances exist where a juror may be excused once accepted. The first circumstance is where the juror is "unable" to perform her duties. The second is where the juror is "disqualified." In this case, Cassel was not "unable" to serve as a juror; therefore, this Court must decide whether she was "disqualified." Miss. Code Ann. § 13-5-1 (1972) explains qualifications for jury service and declares ineligible anyone who has been "convicted of an infamous crime." Clearly, no one suggests that Cassel had been convicted of an infamous crime. Miss. Code Ann. § 13-5-67 (1972) additionally provides that a juror may be disqualified for withholding or misrepresenting information when a "clearly worded" question was posed during voir dire. In this case, Cassel neither withheld nor misrepresented information. Indeed, Cassel volunteered the information upon realizing the attorneys' oversight or failure to ask her about her murdered daughter.
In short, research reveals no case or statutory law which could be construed to disqualify Cassel simply because a member of her family was the victim of a crime. Accord with Myers, 565 So.2d at 557 (where this Court concluded that the juror's qualification was "not corrupted by her husband's prior conviction" of the same offense for which the defendant in the juror's case had been tried and convicted).
All the foregoing is considered against the backdrop of the general principle that a judge is empowered with broad discretion to determine whether a prospective juror can be impartial. See Burt v. State, 493 *1004 So.2d 1325, 1327 (Miss. 1986) ("It is well founded that the trial judge has the discretion to excuse potential jurors for cause if the court believes the juror could not try the case impartially.") (citing cases); Miss. Code Ann. § 13-5-79 (1972) ("Any person ... who will make oath that he [or she] is impartial ... shall be competent as a juror in any criminal case... . Any juror shall be excluded however, if the court be of opinion that she [or she] cannot try the case impartially, and the exclusion shall not be assignable for error."). In this case, the attorneys questioned Cassel about her "feelings" and her ability to be fair and impartial. Based upon her responses, the judge exercised his broad discretion and determined that  procedural bar aside  no grounds or good cause existed to grant McNeal's untimely request to excuse Cassel.
In sum, the fact that Cassel's daughter was murdered six years earlier is tragic; however, it does not prove that he was prejudiced by the participation of Cassel as a juror in his trial. Accord Myers, 565 So.2d at 557; Russell v. State, 220 So.2d 334, 337 (Miss. 1969); cf. Pruett v. State, 431 So.2d 1101, 1107-08 (Miss. 1983). The foregoing leads this Court to the unequivocal conclusion that the judge did not abuse his broad discretion. McNeal's contention is therefore rejected.

B. Issue # 2: Whether Police Investigators Provided False Information to the Magistrate Who Issued the Search Warrant?

1.
In order to secure a search warrant to search McNeal's home for evidence, police detectives presented a magistrate with an affidavit containing facts to show probable cause. McNeal contends that these detectives included false information in the affidavit. Absent this false information, McNeal contends, the detectives would have been unable to establish probable cause. And absent probable cause, the magistrate would have been precluded from issuing the search warrant. According to McNeal, the evidence seized as a result of the allegedly invalid search warrant should have been suppressed as "fruits of the poisonous tree"  but the judge, after holding a hearing, refused to suppress the evidence. This refusal, McNeal concludes, constituted a reversible error.

2.
Both parties agree that the case which controls the disposition of this issue is Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In Franks, the United States Supreme Court explained that:
Where the Defendant makes a substantial preliminary showing that a false statement knowingly and intentionally or with reckless disregard for the truth was included by the Affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the fourth amendment requires that a hearing be held at the Defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the Defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.
438 U.S. at 155-56, 98 S.Ct. at 2674, 57 L.Ed.2d at 667, cited with approval in Bevill v. State, 556 So.2d 699, 712 (Miss. 1990).

3.
With the foregoing in mind, this Court examined the facts in a light most favorable to the State to determine whether McNeal proved by a preponderance that the information contained in the affidavit was false and, if so, whether the information was made "knowingly," "intentionally," "reckless[ly]."
First, McNeal suggests that some of the information contained in the affidavit is false because it contradicts the information *1005 contained in the detectives' investigation report. A comparison of the affidavit with the investigation report yields no contradiction of information. Indeed, the detectives merged the information contained in the affidavit and report by cross-referencing the two documents. That is, the affidavit refers the magistrate to the report for further information. The detectives clearly made no effort to hide from the magistrate any information contained in the report.
McNeal also contends that the following information contained in the affidavit is misleading:
Donald McNeal stated to officers that he did not have Lisa Brandenburg's telephone number. Donald McNeal called Lisa Brandenburg on 3 October 1985 at approximately [7:30].
Interestingly, while McNeal contends that this information is misleading, he also concedes that it is factually correct. See McNeal's Brief at 23 ("Both these facts are correct."). In view of McNeal's concession  that the information is correct  this Court rejects his contention that the detectives provided the magistrate with false or misleading information.

4.
In sum, McNeal failed to prove that the information contained in the affidavit was false or misleading. This Court therefore concludes that the judge did not err in refusing to suppress the evidence and affirms on this issue.

C. Issue # 3: Whether the Judge Erred in Refusing to Suppress Evidence Seized in the Search of McNeal's Home?
Armed with a search warrant, the detectives searched McNeal's home and seized evidence. McNeal contends that the detectives exceeded the scope of the warrant by conducting a constitutionally impermissible "general search" of his home. On the basis of this allegedly unconstitutional search, McNeal concludes that the judge should have suppressed all evidence seized from his home.
McNeal failed to raise this specific issue at the trial level. He therefore waived his right to raise the issue on appeal. Accord Roundtree v. State, 568 So.2d 1173, 1177 (Miss. 1990) (refusing to address issue because appellant failed to raise the specific issue at the trial level); Brown v. State, 534 So.2d 1019, 1024 (Miss. 1988) (same) (citing cases).
In sum, this Court affirms on this issue.

D. Issue # 4: Whether the Judge Erred in Admitting Evidence Seized from McNeal's Automobile?

1.
As discussed, the detectives secured a valid warrant to search McNeal's home. The scope of the search warrant did not include McNeal's automobile. Nonetheless, based on what they had found in the home, the detectives searched the automobile.
McNeal contends that, in the absence of a warrant, the detectives were not authorized to search the automobile. McNeal fails to cite any law which supports his contention. He did cite one case in his halfpage analysis of this issue; however, this case provides no specific support for his contention. See McNeal's Brief at 27 (citing Lockett v. State, 517 So.2d 1317 (Miss. 1987)).

2.
A review of relevant law is in order. The fourth amendment to the United States Constitution dictates:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
See also U.S. Const. amend. XIV; Miss. Const. art. III, § 23. Thus, the general rule has always been that warrantless searches of private property are per se unreasonable. See, e.g., Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).
*1006 Exceptions to the general rule have been carved. See generally 1 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 1.1 (1978). One of these exceptions is commonly known as the "automobile exception." See, e.g., Robbins v. California, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981); New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Horton v. State, 408 So.2d 1197 (Miss. 1982); see generally Note, An Expansion of the "Automobile Exception" Rule to the Warrant Requirement of the Fourth Amendment  California v. Carney, 471 U.S. 386 (1985), 6 Miss.Coll.L.Rev. 173 (1986). Citing this "exception," courts have permitted warrantless searches of an automobile based on probable cause when, in factually-similar cases involving search of a house, a warrant would have been required. See, e.g., Franklin v. State, 587 So.2d 905, 907 (Miss. 1991).
The United States Supreme Court case of Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464 41 L.Ed.2d 325 (1974), is particularly dispositive of this issue. In Cardwell, the Supreme Court concluded: "[W]here probable cause exists, a warrantless search of ... a car is not unreasonable under the Fourth and Fourteenth Amendments." Id. at 592, 94 S.Ct. at 2464, 41 L.Ed.2d at 336.

3.
The trial judge in the case sub judice found that probable cause existed and that the warrantless search was therefore valid. Id.; accord Barry v. State, 406 So.2d 45, 47 (Miss. 1981) ("A warrantless search of an automobile has long been recognized as an exception to the warrant requirement provided probable cause ... existed."); Hall v. State, 288 So.2d 850, 851 (Miss. 1974) ("An automobile may be searched ... without a warrant ... because there is probable cause that the vehicle may be evidence of a crime or contains something that offends against the law."); see also Texas v. White, 423 U.S. 67, 67-68, 96 S.Ct. 304, 305, 46 L.Ed.2d 209, 211-12 (1975) (evidence seized after warrantless search of automobile at police station properly admitted since trial judge properly determined probable cause existed); U.S. v. Abadie, 879 F.2d 1260, 1264 (5th Cir.) (holding that warrantless search of automobile is constitutionally permissible so long as officers have probable cause to believe evidence of crime may be found), cert. denied, 493 U.S. 1005, 110 S.Ct. 569, 107 L.Ed.2d 563 (1989).
The judge's determination must have been made in accordance with the following relevant principles.
It is incumbent upon all judges of this State to scrupulously examine the facts in each case, make a careful evaluation, and in their own best judgment gleaned from life's experiences determine whether probable cause existed for a particular search... .
Rooks v. State, 529 So.2d 546, 553-55 (Miss. 1988) (citing numerous authorities and providing extensive analysis of what a trial judge should consider when determining whether probable cause exists). Furthermore:
[Trial judges should take] a "totality of circumstances" approach to each case, dealing with "probabilities," not "technicalities," but "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."
Rooks, 529 So.2d at 554 (quoting Illinois v. Gates, 462 U.S. 213, 230-31, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527, 543 (1983)); accord Woodward v. State, 533 So.2d 418, 427 (Miss. 1988) ("`The recurring questions of the reasonableness [or validity] of searches must find resolution in the facts and circumstances of each case... . Reasonableness is in the first instance for the [trial judge] to determine.'") (quoting United States v. Rabinowitz, 339 U.S. 56, 63, 70 S.Ct. 430, 434, 94 L.Ed. 653 (1950)); see also Edlin v. State, 523 So.2d 42, 46-48 (Miss. 1988); Lockett v. State, 517 So.2d 1317, 1324 (Miss. 1987); Alexander v. State, 503 So.2d 235, 239 (Miss. 1987); Seales v. State, 495 So.2d 475, 478 (Miss. 1986); Lee v. State, 435 So.2d 674, 676 (Miss. 1983); *1007 Crum v. State, 349 So.2d 1059, 1062 (Miss. 1977).
The "duty of a reviewing court is simply to ensure that ... a `substantial basis for concluding' that probable cause existed" was evidenced. Rooks, 529 So.2d at 554 (quoting Gates, 462 U.S. at 238-39, 103 S.Ct. at 2332, 76 L.Ed.2d at 548). Restated, this Court is restricted to a de novo review of the trial judge's findings using the applicable "substantial evidence"/"clearly erroneous" standard. Hansen v. State, 592 So.2d 114 (Miss. 1991) ("The Circuit Court found that the officers had probable cause for ... the ... search and subsequent seizures. These findings are supported by substantial evidence.") (citing Turner v. State, 573 So.2d 657, 665 (Miss. 1990), and other authorities); see also Nathan v. State, 552 So.2d 99, 103 (Miss. 1989) (applying "clearly erroneous" standard to review of judge's fact-finding); Woodward, 533 So.2d at 426-27 ("clearly erroneous" standard applied); West v. State, 463 So.2d 1048, 1056 (Miss. 1985) (same).

4.
Substantial evidence existed in the case sub judice upon which a judge could base a finding that probable cause existed to search McNeal's automobile without a warrant. The detectives, for example, had probable cause to obtain a warrant to search McNeal's home for evidence. This alone  that is, the existence of probable cause to search McNeal's home  should be deemed sufficient to justify the detectives' warrantless search of the automobile. In addition, the evidence found in the home provided the detectives with probable cause to believe that a murder may have transpired in the home and that Darlene's body may have been placed in the automobile for transportation. The affidavit used to secure the search warrant delineates some of this evidence. Moreover, the detectives testified that their search of the home revealed missing and/or cleaned carpeting, missing furniture, splattered blood stains, bloody socks, and other evidence of a crime and a cover-up attempt. Again, such evidence provided the detectives with probable cause to believe that Darlene may have been murdered in the home and then transported by automobile to an unknown destination. In view of these facts, this Court concludes that the record contains substantial evidence to support a finding that probable cause existed for a warrantless search of McNeal's automobile.
In sum, this Court affirms on this issue.

E. Issue # 5: Whether the Judge Erred in Allowing Dr. Gard to Testify with Regard to Ballistics Matters?

1.
Dr. Paul Gard, a clinical pathologist, conducted the autopsy on Darlene's body. Gard testified that Darlene died from a gunshot wound to the head and that the wound was "created by [a] bullet [whose] size [was] consistent ... with a 9 millimeter shot." Coincidentally, McNeal owned a 9 millimeter pistol.
McNeal complains now  as he did during the trial  that Gard should have been disallowed from testifying because he was not qualified as an expert in ballistics. Specifically, McNeal accepts Gard "as an expert in the field of pathology but not in forensic pathology and certainly not in ballistics."

2.
This Court rejects McNeal's complaint.
[U]nder our new Rules of Evidence, the decision of whether or not an expert witness is qualified to testify is within the trial court's discretion. The test is whether a witness "possesses peculiar knowledge or information regarding the relevant subject matter which is not likely to be possessed by a layman."
May v. State, 524 So.2d 957, 963 (Miss. 1988) (citations omitted). "[T]o testify as an expert a witness need not be infallible, or possess the highest degree of skill, it being generally sufficient that he possess peculiar knowledge respecting matter involved not likely to be possessed by the ordinary layman." Floyd v. State, 166 *1008 Miss. 15, 37, 148 So. 226, 231 (1933).[2] Finally, a judge's determination that a witness is qualified to testify as an expert "will not be reversed unless it clearly appears that the witness was not qualified." Grinnell v. State, 230 So.2d 555, 557-58 (Miss. 1970).

3.
The record supports the State's discussion of Gard's qualifications:
[A]fter obtaining his medical degree, [Gard] practiced surgery and general medicine for sixteen years, after which he underwent an additional four years of specialized training in pathology. The four years of training in pathology included clinical pathology, anatomy, pathology, and forensic pathology, and further, he had taken numerous workshops in forensic pathology since the four year training. In addition to forensic training, he had twenty years of experience in forensic pathology. He had received particular training in the science of ballistics in workshops in Washington and with the FBI. He stated it was almost impossible to separate ballistics from forensic workshops. He also had training in Kentucky dealing with gunshot and knife wounds. He had received additional training in forensic pathology including gunshot wounds from a noted expert. He examined many gunshot wounds at Charity Hospital in New Orleans.
See State's Brief at 36. Based on the foregoing, this Court concludes that McNeal has failed to "clearly" demonstrate that Gard was unqualified to testify about Darlene's head wound.
In sum, the judge did not abuse his discretion. This Court, therefore, affirms on this issue.

F. Issue # 6: Whether Mississippi Was Without Jurisdiction and Whether Jackson County Was the Proper Place of Venue?

1.
Police found Darlene's body in St. Tammany Parish, Louisiana; thus, McNeal contends that Darlene was probably murdered there. Because Darlene was murdered in Louisiana, McNeal concludes that Mississippi courts were without jurisdiction to try his case. Accordingly, Jackson County was not the proper place of venue. The State disagreed  as did the judge, who overruled McNeal's motion to dismiss.

2.
Mississippi had jurisdiction to try this case if the evidence supports the conclusion that Darlene was murdered within this State's borders. See, e.g., Pruett v. State, 431 So.2d 1101 (Miss. 1983). Assuming Mississippi did have jurisdiction, then the county in which the murder occurred was the proper place of venue. See Hickson v. State, 472 So.2d 379, 382 (Miss. 1985) ("[T]he general rule [holds] that venue lies in the county where the [criminal] offense was committed.") (citing Miss. Code Ann. § 99-11-3 (1972)).[3] In a murder case, "`the finding of a dead body in a particular county raises the presumption, or supports an inference, that the killing took place there.'" 472 So.2d at 382 (quoting State v. Fabian, 263 So.2d 773, 775 (Miss. 1972). This presumption or inference, however, is rebuttable. Id. (citing Fairchild v. State, 459 So.2d 793, 799 (Miss. 1984)). If evidence is presented to rebut this presumption, then the issue becomes one of fact for the jury to resolve.[4]Fabian, 263 So.2d at 775 & 777.

*1009 3.

Application of law to the facts leads to the conclusion that the State sufficiently rebutted the presumption that Darlene was murdered in Tammany Parish. In other words, the State presented more than sufficient evidence to rebut McNeal's contention that Darlene was murdered in Tammany Parish. Mississippi, therefore, had jurisdiction; and the jury properly found that she was probably murdered in Jackson County  the appropriate place of venue. "Enough said." Hickson, 472 So.2d at 382; see also Abbott, Venue of Transitory Actions Against Resident Individual Citizens in Mississippi  Statutory Revision Could Remove Needless Complexity, 58 Miss.L.J. 1, 3 (1988) ("Problems in interpreting venue statutes have occurred throughout the United States in general and in Mississippi in particular, especially with regard to judicial and legislative attempts to define and apply the terms `venue' and `jurisdiction.'") (footnotes omitted).
In sum, the trial judge did not err in overruling McNeal's motion to dismiss for lack of jurisdiction. This Court, therefore, affirms on this issue.

G. Issue # 7: Whether the "Jury Disregarded Its Duty to Follow the Law Requiring the State to Exclude Every Reasonable Hypothesis Consistent with Innocence?"

1.
McNeal did not frame this issue in clear terms. A review of the record leads to the conclusion that his motion for a new trial or a j.n.o.v. is the only issue he raised at the trial level which remotely resembles the issue raised here.

2.
Assuming McNeal is complaining about the judge's denial of his motion for a new trial or j.n.o.v., then this Court is reminded of the familiar standards of review. Pursuant to the standard applicable to review of an unsuccessful motion for a new trial:
[T]he Court is "not at liberty to direct that the defendant be discharged short of a conclusion ... that given the evidence, taken in the light most favorable to the verdict, no reasonable hypothetical juror could find beyond a reasonable doubt that the defendant was guilty."
Gill v. State, 485 So.2d 1047, 1049 (Miss. 1986). And pursuant to the standard applicable to review of an unsuccessful motion for a j.n.o.v.:
This Court will not order a new trial "unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." Groseclose v. State, 440 So.2d 297, 300 (Miss. 1983). Factual disputes are properly resolved by the jury and do not mandate a new trial. Temple v. State, 498 So.2d 379, 382 (Miss. 1986).
Benson v. State, 551 So.2d 188, 192-93 (Miss. 1989).

3.
A review of the evidence with these standards in mind leads this Court to conclude that the judge properly denied McNeal's motion for a new trial or j.n.o.v.
In sum, this Court affirms on this issue.

H. Issue # 8: Whether the Judge Erred in Refusing to Admit into Evidence a Suicide Note Allegedly Written by Darlene?

1.
McNeal moved to have admitted into evidence a photocopy of a suicide note allegedly written by Darlene nearly twenty months prior to her murder. The judge overruled the motion.
Specifically, the judge felt that the note had no relevance whatsoever to the crime with which McNeal had been charged:
[N]othing she said in [the note] has any bearing upon the murder. It may shed some light on [McNeal and Darlene's] relationship [in February 1984], but that has nothing to do with the murder [which occurred in September 1985  nearly twenty months later].
... .
... It's too remote... .
... .

*1010 ... [I]t wasn't written at a time when she was anticipating dying; it was a murder; it was written a year ahead.
Vol. VII, at 1037-1040 & 1043.
The judge also questioned the authenticity of the note:
[T]he original is not even here. This is a [photo]copy. That's all I've seen. I don't know where the original is. Nobody has mentioned it to me.
... .
The [handwriting] expert has testified [that the note is] not conclusively hers. The mother said it looks like it, but look alike is not it. It's similar to. That doesn't get it. You know what I mean? You've got the testimony problem that it may or may not be her writing to start with.
Id. at 1041.

2.
The judge's expression of concern over the note's authenticity and relevance is well-taken. Therefore, this Court concludes that no abuse of discretion occurred. See Brown v. State, 534 So.2d 1019, 1024-25 (Miss. 1988); Miss.R.Evid. 901 Comment a ("The authentication and identification aspects of evidence are central to the concept of relevancy. Unless it be satisfactorily shown that an item of evidence is `genuine,' the item is irrelevant and should be excluded."); see also id. at 401-03.[5]
In sum, the judge properly denied McNeal's motion to admit the note. This Court, therefore, affirms on this issue.

I. Issue # 9: Whether the Photographs Were Too Gruesome To Admit?

1.
In McNeal, 551 So.2d at 151, this Court reversed because various gruesome and inflammatory photographs of Darlene's maggot-infested body were erroneously admitted into evidence. On remand, the judge admitted other photographs into evidence. McNeal now contends that four of these photographs were also too prejudicial to admit.

2.
In Williams v. State, Justice Sullivan summarized the law governing admissibility of gruesome and inflammatory photographs:
[G]enerally, the admissibility of photo[s] is within the sound discretion of the trial judge and the admission is proper, so long as their introduction serves some useful evidentiary purpose... .
[Accordingly, w]e have repeatedly admitted photo[s] of every description with the explanation that some "probative value" is present... . Abuse of discretion is sometimes explained to be admission of photo[s] when a killing is not contradicted or denied or the corpus delicti and the identity of the deceased have been established... .
A review of our case law indicates that the discretion of the trial judge runs toward almost unlimited admissibility regardless of gruesomeness, repetitiveness, and the extenuation of probative value. At this point ..., no meaningful limits exist in these so-called balance of probative/prejudicial effect of photo[s] test.
544 So.2d 782, 785 (Miss. 1987) (citations omitted). A few years later  in McNeal  this Court finally established a line of demarcation. This Court opined that eight gruesome photographs depicting Darlene's maggot-infested body were deemed devoid of "any evidentiary purpose." The Court concluded: "[W]e believe that the probative value of the photos is outweighed by their tendency to inflame and prejudice the jury"; therefore, "the trial [judge] abused [his] discretion ... in allowing the[ir] introduction." 551 So.2d at 159 (citing MISS. R.EVID. 403).[6] At that point, the Court *1011 delineated a guideline for future cases: When deciding on the admissibility of gruesome photos, trial judges must consider: "(1) whether the proof is absolute or in doubt as to identity of the guilty party, [and] (2) whether the photos are necessary evidence or simply a ploy on the part of the prosecutor to arouse the passion and prejudice of the jury." Id.

3.
This Court has examined these photographs and concludes that the trial judge did not err in admitting the photographs.

III. CONCLUSION
On the basis of the foregoing, this Court affirms McNeal's conviction and sentence.
AFFIRMED.
HAWKINS, C.J., and SULLIVAN, PITTMAN, BANKS, McRAE, ROBERTS and SMITH, JJ., concur.
DAN M. LEE, P.J., concurs in result only.

ON PETITION FOR REHEARING
Rehearing Denied May 27, 1993.
BANKS, Justice, dissenting on petition for rehearing:
Because I believe that the lower court abused its discretion by declining to allow the use of a peremptory challenge when new information had been divulged, when the jury had not been impaneled and sworn, and where there was no showing of irremediable harm to the state, I would grant this petition for rehearing, reverse the conviction and remand for new trial.
DAN M. LEE, P.J., and SULLIVAN, J., join this dissent.
NOTES
[1] Only a few significant differences exist between the evidence adduced in the first and second trials. In the first trial, the State called Freddie Suttles, a prison inmate confined in the same cellblock as McNeal, to testify that McNeal confessed to him the details of the murder. On appeal, this Court cautioned the State about using an "unreliable" source such as Suttles. This Court did not, however, reach the issue of whether such use could constitute a reversible error. See, McNeal, 551 So.2d at 157-59. The State wisely decided to refrain from using Suttles' testimony in the second trial.

Evidence not mentioned in the McNeal opinion but adduced in the second trial includes a list of life insurance policies on the victim's life. Investigators found these policies  totalling $218,000  along with some other related evidence during a search of McNeal's home. The search of the home also yielded a bloody pair of socks containing a hair from McNeal's leg. The blood, however, did not belong to McNeal.
The McNeal opinion also omitted the testimony of Ramona Balius who testified in both trials. Balius testified that she and McNeal had been "developing a dating relationship" around the time of the murder. She noted that McNeal had informed her that he was not married, that he had a live-in girlfriend, and that the girlfriend would not be a problem by the end of the week. McNeal's prediction proved true; investigators found his "girlfriend" (his wife) dead several days later.
Finally, eight gruesome photographs  which were erroneously admitted into evidence in the first trial because their prejudicial effect outweighed their probative value  were not admitted into evidence in the second trial.
[2] "The proper procedure and policy when an expert witness is offered is for the court to permit qualification by the party offering the expert witness, and then to permit voir dire by the opposite party before ruling on the competency of the witness... . [T]he failure ... to follow [this] procedure does not [per se] constitute reversible error." Jordan v. State, 464 So.2d 475, 486 (Miss. 1985).
[3] "But, if on the trial the evidence makes it doubtful in which of several counties ... the offense was committed, such doubt shall not avail to procure the acquittal of the defendant." Miss. Code Ann. § 99-11-3 (1972).
[4] If the evidence presented is circumstantial, then venue must be proved to the exclusion of every reasonable hypothesis. Fabian, 263 So.2d at 776.
[5] Assuming arguendo that the judge abused his discretion, then a reversal would be unwarranted "unless a substantial right of [McNeal's was] affected." Miss.R.Evid. 103(a). McNeal failed to show how a "substantial right" of his was affected by the judge's denial of his motion. Indeed, McNeal wholly failed to respond to the judge's repeated requests for an authority or ground upon which the judge could base a decision to admit the note into evidence.
[6] Rule 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."