# IN THE COURT OF APPEALS
# OF THE
# STATE OF MISSISSIPPI

## NO. 96-KA-01136 COA

**REGINALD TORLENTUS JOHNSON**                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/11/96 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | THOMAS M. FORTNER |
| | ANDRE DE GRUY |
| | ROBERT M. RYAN |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: GLENN WATTS |
| DISTRICT ATTORNEY: | EDWARD J.PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | MURDER: SENTENCED TO SERVE A TERM OF LIFE IN THE CUSTODY OF THE MDOC |
| DISPOSITION: | AFFIRMED - 12/18/98 |
| MOTION FOR REHEARING FILED: | 1/11/99 |
| CERTIORARI FILED: | 5/6/99 |
| MANDATE ISSUED: | |

BEFORE McMILLIN, P.J., COLEMAN, AND SOUTHWICK, JJ.

McMILLIN, P.J., FOR THE COURT:

¶1. Reginald Johnson has appealed his conviction of murder in the shooting death of William Charleston. He raises three issues on appeal. First, he alleges that the State engaged in a pattern of peremptorily striking black venire members based solely on considerations of race in violation of the United States Supreme Court decision in *Batson v. Kentucky.* Second, he claims that the trial court erred in permitting a pathologist to give expert medical testimony that was beyond the witness's level of expertise. Third, he points out that he was denied a jury instruction telling the jury that he had no duty to retreat in the face of aggression and claims that this effectively destroyed his ability to defend on his theory of self-defense. We find these issues without merit and affirm the conviction.

**I.**

## Facts

¶2. Evidence presented by the State through a number of witnesses indicated that Johnson confronted Charleston with an allegation that Charleston had stolen Johnson's bicycle. After a heated exchange, Johnson drew a pistol and fired six shots into Charleston, most of them striking Charleston from the rear as Charleston attempted to walk away from the confrontation. A pathologist testified that Charleston died as a direct result of these multiple gunshot wounds.

## II.

## The First Issue: The *Batson* Challenge

¶3. After the State had exercised all six of its peremptory challenges to remove blacks from consideration for jury service, the defense raised the issue that the State was exercising its strikes in a discriminatory fashion to systematically exclude these black venire members solely on the basis of race. The State countered that the facts did not establish a prima facie case of discriminatory intent in its exercise of the permitted peremptory challenges. Rather than decide that threshold issue, the trial court simply directed the State to offer race-neutral reasons for the six strikes. The State proceeded to do so. In summary, those reasons offered were as follows:

(a) Juror One, Panel One was inattentive and unresponsive.

(b) Juror Six, Panel One's husband was incarcerated in the penitentiary on a drug charge.

(c) Juror Nine, Panel One was struck because of age, being twenty-three years old.

(d) Juror Ten, Panel One was unresponsive and had served on a civil jury that returned a verdict against a police officer.

(e) Juror Eleven, Panel One was struck because of age, being twenty-three years old.

(f) Juror One, Panel Two was struck because of age, being twenty-nine years of age, and because that juror had been on a jury that returned a defendant's verdict in a criminal prosecution.

¶4. The defense was then given the opportunity to be heard on the challenges. Defense counsel's response was to the effect that the reasoning offered by the State was so flimsy and unsubstantiated as to suggest that it was offered merely to hide the true discriminatory purpose for the strikes. The trial court announced, without elaboration, that all six peremptory challenges would be permitted to stand. It is that ruling that Johnson now asserts to be reversible error.

¶5. The practice of using peremptory strikes to systematically remove jurors of a particular race based solely on considerations of their race is not permitted under federal constitutional principles. *Batson v. Kentucky,* 476 U.S. 79 (1986).

¶6. The *Batson* decision gives a sketchy procedure for the court to follow when the defense suggests that the prosecution is engaged in this discriminatory practice. First, the trial court must determine whether the facts establish a prima facie case of discriminatory practice by the State. *Id.* at 96. If the court concludes that a prima facie case of discrimination has been made, the court must then compel the prosecution to offer race-neutral reasons for its strikes. *Id.* at 97. It is not necessary that those reasons rise to the level of a

ground to challenge for cause. It is enough to show that the reason is not based on any improper racial considerations. *Id.* at 97-98. Once the prosecution offers its reasons for using the strikes, the trial court must undertake a two-step analysis. First, it must determine whether the reasons offered are, in fact, race neutral on their face. Second, assuming the reasons are found to be race neutral, the trial court must proceed to explore the more subjective aspect of the prosecution's motivation in making the strikes to determine whether the reasons offered are mere pretext, serving to disguise the prosecution's race-driven motivation to exclude these potential jurors. *Purkett v. Elem*, 514 U.S. 765, 768 (1995).

¶7. The trial court appears to have skipped over the first step of a *Batson* analysis when it failed to find that a prima facie case of discriminatory intent had been made before requiring the State to articulate its race-neutral reasons. However, we have little trouble in concluding that, in the case where there are various racial groups represented on the venire, the fact that one side exercises all six of its strikes to remove members of one particular race is, of itself, sufficient to make a prima facie of discrimination. We, therefore, find that it was appropriate for the trial court to require the State to offer its race-neutral explanations even though that order was not preceded by a specific finding that a prima facie case of discriminatory purpose had been established.

¶8. The trial court in this case, by permitting the challenges to stand, necessarily found that the reasons offered were race neutral on their face. The defense does not make a serious challenge to that proposition, and there is case law to support each of the reasons offered as being acceptable race neutral reasons to exercise peremptory strikes. There is, therefore, no point in belaboring that question further. The defense, instead, seeks to argue that the reasons offered were mere pretexts for the State's hidden purpose of systematically excluding blacks from the jury. The burden of persuasion on that issue lies with the defense at all times. *Id.*

¶9. The trial court is necessarily vested with substantial discretion in resolving disputed questions raised under the flag of *Batson*. *Hatten v. State*, 628 So. 2d 294, 298 (Miss 1993). This is especially true when the battle ground is whether the prosecution was truthful in offering its reasons for exercising its strikes or was being less than candid with the court, since that matter involves, in large part, an analysis of the demeanor and credibility of the prosecuting attorney. *Stewart v. State*, 662 So. 2d 552, 559 (Miss. 1995). The trial court, by its first-hand opportunity to see and hear the attorneys, is in the best position to evaluate the good faith of the State in advancing its reasons for its strikes.

¶10. In this case, the defense offers no persuasive argument as to why we should conclude that the trial court was manifestly in error in accepting as genuine the State's reasons for striking these potential jurors. In the absence of any compelling reason to so find, we have no basis to intercede with the trial court's handling of the matter, and we decline to do so in this instance.

¶11. The defense also complains that the trial court failed to make detailed findings of fact as to its ruling on the *Batson* matter, and that this failure constitutes reversible error. In support of that argument, Johnson cites the case of *Hatten v. State,* 628 So. 2d 294 (Miss. 1993). In reviewing the trial court's decision to accept the State's facially race-neutral reasons as being offered in good faith, we do not find the absence of such detailed findings to be reversible error. The trial court's decision on this aspect of a *Batson* challenge, as we have observed, involves a subjective analysis of the credibility of the prosecuting attorney. It must be based in substantial part on the trial court's observations of the attorney's conduct and demeanor and may also properly involve other largely intangible and even intuitive considerations. Whether those complex

considerations could be articulated with any precision is, in itself, doubtful. Even if they could, it is equally as doubtful that the resulting information would provide any meaningful assistance to this Court in deciding whether the court abused its discretion. We decline to reverse the conviction on this basis.

## III.

### The Second Issue: Expert Evidence from the Pathologist

¶12. Dr. Rodrigo Galvez was called by the State and offered as an expert in pathology. During a voir dire of this witness outside the jury's presence, it was brought out that Dr. Galvez had once taken the examination to become board certified as a forensic pathologist and had failed the test. The defense then entered an objection to Dr. Galvez being permitted to offer expert testimony in the field of pathology. Dr. Galvez was shown to be a practicing physician with a double specialty in psychiatry and pathology. He testified to being a board certified pathologist (as opposed to the separate specialty of "forensic pathology") since 1968 and to having testified as an expert in matters of pathology in a number of the courts of this State as well as in other state and federal courts. He testified that he had performed over 4,000 autopsies and said that seventy-five percent of those involved matters of forensic inquiry into the cause of death. Of the 4,000 autopsies, he estimated that ninety percent of them involved gunshot wounds.

¶13. Over the defense's objection, Dr. Galvez was accepted as an expert in the field of forensic pathology. He testified briefly to the various injuries he observed to Charleston's body, tracing the entry point of each bullet and the exit point for those bullets that penetrated the body completely. He then offered his expert opinion that Charleston died of the multiple gunshot wounds he had just described.

¶14. Now, in this appeal, Johnson argues that it was reversible error to admit this testimony. He bases his argument exclusively on the proposition that Dr. Galvez was not a board certified forensic pathologist. The qualification of an expert who will offer expert opinion under Mississippi Rule of Evidence 702 is a matter vested in the sound discretion of the trial court. *McNeal v. State*, 617 So. 2d 999, 1007 (Miss. 1993). There is no authority for the proposition that only board certified forensic pathologists are qualified to give expert opinion evidence in matters relating to deaths arising out of traumatic injuries. Certainly, Dr. Galvez appeared from the testimony concerning his education and experience to be qualified by any reasonable standard to offer the kind of expert evidence that is reflected in this record. While board certification may be a usable criterion for the trial court to consider when deciding to accept or reject a proposed expert in medical matters, such certification is not and ought not to be the final word on the subject. We find this issue to be totally lacking in merit.

## IV.

### The Third Issue: The "Retreat" Instruction

¶15. Johnson asked for an instruction that would have told the jury that he was under no duty to retreat in the face of a physical threat but was permitted under the law to stand his ground and meet force with reasonable countering force. The trial court refused to grant such an instruction, and Johnson now assigns that ruling as error on appeal. He claims that the failure to give that instruction denied him the opportunity to fully present his theory of the case to the jury.

¶16. It is true under Mississippi law that a person is not required to retreat in the face of imminent assault. *Haynes v. State*, 451 So. 2d 227, 229 (Miss. 1984). However, simply because an instruction contains an

accurate statement of the law on the subject does not mean that the instruction must be given if requested. The purpose of the instructions is to acquaint the jury with the law as it pertains to the particular facts of the case. *Coleman v. State*, 697 So. 2d 777, 782 (Miss. 1997). Therefore, before an instruction may be given, it must appear that there is some evidence in the record to support the instruction. *Neal v. State*, 451 So. 2d 743, 761 (Miss. 1984).

¶17. In this case, the defense put on no evidence, choosing to rest immediately after the State rested its case. None of the State's witnesses, either in direct examination or during cross examination, offered any evidence that Charleston confronted Johnson in a threatening manner or did anything to put Johnson in fear of an imminent assault. Despite this lack of evidence of any aggressive behavior on Charleston's part, the trial court -- apparently out of an abundance of caution -- gave Johnson a self-defense instruction, but declined the requested "no duty to retreat" instruction.

¶18. This Court is satisfied, based on our review of the testimony, that Johnson received more favorable treatment than the evidence warranted when he was given a self-defense instruction. There was certainly no evidence to even hint at the proposition that Johnson killed Charleston while Johnson rightfully stood his ground against an actual physical assault by Charleston. An instruction concerning Johnson's alleged rights in that regard was not warranted by the evidence and could only have served to confuse the jury. The trial court did not err in refusing the requested instruction.

**¶19. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE TO LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.**

**BRIDGES, C.J., THOMAS, P.J., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**